DELRAY BEACH AVIATION CORPO-
RATION, a Florida Corporation,
and Bert Boldt, Plaintiffs,

v.

MOONEY AIRCRAFT, INC., Defendant.

Civ. No. 3015.

United States District Court
W. D. Texas,
San Antonio Division.

May 10, 1963.

256

Preston H. Dial, Jr., and Robert B. Thornton of Green, Green & Wiley, San Antonio, Tex., for plaintiffs.

Joseph F. Leonard, Jr., Kerrville, Tex., for defendant.

GRAVEN, Senior District Judge (assigned).

The plaintiffs in this action seek judgment against the defendant on a judgment rendered in their favor and against the defendant by the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida, on April 7, 1961. The defense of the defendant is that the Florida Court rendering the judgment against it was lacking in jurisdiction to do so.

The defendant, Mooney Aircraft, Inc., is a Kansas corporation engaged in the manufacture of airplanes at Kerrville, Texas. It will hereinafter be frequently referred to as Mooney Aircraft. On September 23, 1958, Mooney Aircraft entered into a written agreement with the Metropolitan Aircraft Corporation which is designated as "Distribution and Sales Agreement." The latter will hereinafter be frequently referred to as

Metropolitan Aircraft. It was a Florida corporation. Its place of business was in Miami, Florida. During the period from October 31, 1958, until November 1, 1961, the Mooney Sales Company, a Texas corporation, had to do with the sales and national advertising of the airplanes manufactured by Mooney Aircraft. During the period of time here pertinent, Hal Rachal, a practicing attorney, was President and Chairman of the Board of Directors of Mooney Aircraft and active in the management of its affairs. He was also its general counsel. During the same period Richard Martin was in the employ of Mooney Sales Company and supervised the distribution of the defendant's airplanes in Florida. During the same period Richard H. Olsen, a practicing attorney of Miami, Florida, was Vice President of Metropolitan Aircraft and its general attorney.

In May 1959 in Miami the plaintiff Delray Beach Aviation Corporation purchased from the Metropolitan Aircraft Corporation an airplane manufactured by Mooney Aircraft. On June 29, 1959, while the airplane was being flown by the plaintiff, Bert Boldt, it crashed. The crash resulted in personal injury to him and total destruction of the airplane. On March 17, 1960, the plaintiffs brought an action in the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida, against Metropolitan Aircraft Corporation and Mooney Aircraft for damages sustained as a result of the crash. The return of the Sheriff of Dade County, Florida, recited that on March 18, 1960, in Dade County he served the same on Mooney Aircraft by making service on "R. H. Olsen, Res. Agent" of the corporation and that he served the same on Metropolitan Aircraft Corporation by making service on "R. H. Olsen, V. Pres." The R. H. Olsen referred to in the returns of service was one and the same person as Richard H. Olsen. In their complaint the plaintiffs alleged that the crash of the airplane was caused by the malfunctioning of the fuel tank selector valve. They alleged that at the time the airplane was sold to the Delray Beach Aviation Corporation by Metropolitan Aircraft the selector valve was defective. They charged both Metropolitan Aircraft and Mooney Aircraft with breaches of duty in connection therewith. They asked compensatory damages in excess of $5,000.00.

On April 11, 1960, Metropolitan Aircraft, appearing by its attorney, Richard H. Olsen, filed a motion to dismiss on the ground that the complaint failed to state a cause of action upon which relief could be granted. On May 5, 1960, the attorney for the plaintiffs mailed a copy of the complaint to Mooney Aircraft. On May 19, 1960, Richard H. Olsen appeared for Mooney Aircraft and filed in its behalf a special appearance and motion to quash service on the ground that no valid service of process had been made upon it and that the Court was lacking in jurisdiction as to it. On September 8, 1960, the motions of both defendants came on for hearing and on the same day the Court entered an order denying both motions. The Court in its order granted the defendants twenty days to answer or plead. On November 8, 1960, Metropolitan Aircraft filed its answer which was in substance a general denial. On December 28, 1960, the plaintiffs filed notice of trial. Notice of the motion was given to Richard H. Olsen as attorney for both defendants. On December 30, 1960, on motion of the plaintiffs, the Court dismissed the action as to Metropolitan Aircraft. On February 21, 1961, on motion of the plaintiffs, Mooney Aircraft was adjudged to be in default for failure to answer or plead. On March 22, 1961, the plaintiffs gave notice to Richard H. Olsen and to Mooney Aircraft that the case as to the latter would come on for trial on April 3, 1961. On April 7, 1961, following a hearing, the Court entered judgment against Mooney Aircraft and in favor of the Delray Beach Aviation Corporation in the sum of $17,364.00 and against Mooney Aircraft in favor of Bert Boldt in the sum of $655.00. No

appeal was taken by Mooney Aircraft. The plaintiffs' present action is based upon that judgment.

The pivotal question in this case is whether the Florida Court had jurisdiction as to Mooney Aircraft. The plaintiffs contend that the Florida Court did have jurisdiction as to Mooney Aircraft. They assert that that Court acquired jurisdiction by the appearance of Richard H. Olsen as attorney for Mooney Aircraft. Mooney Aircraft asserts that Richard H. Olsen lacked authority to appear for it. The plaintiffs assert by way of alternative that even if it be found that Richard H. Olsen lacked authority to appear for Mooney Aircraft the Florida Court acquired jurisdiction as to Mooney Aircraft by the service of process made on Richard H. Olsen. Mooney Aircraft asserts that the service of process made upon Richard H. Olsen was invalid so far as the service pertained to it and that the Florida Court did not acquire jurisdiction over it thereby. The plaintiffs also contend that the ruling of the Florida Court that it had jurisdiction as to Mooney Aircraft is res judicata as to the question of jurisdiction.

■ It is well settled that if a defendant enters a special appearance for the sole purpose of quashing service for want of jurisdiction and is heard on the question and his objection to jurisdiction is overruled and he seeks no review and a judgment is subsequently entered against him on the merits, he cannot attack the judgment on the ground of lack of jurisdiction when sued upon the judgment in another jurisdiction. Baldwin v. Iowa State Traveling Men's Association (1931), 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244; Restatement of Judgments, Section 9. See, also, Mike Hooks, Inc. v. Pena (5th Cir. 1963), 313 F.2d 696, 699. Restatement of Judgments, Section 9, states, in part:

"Where * * * the defendant appears in the action only to object that the court has no jurisdiction over him, that is where he enters a special appearance, the court does not acquire jurisdiction over him because of his appearance * * * except to decide the question so raised. But if the court determines that it has jurisdiction over him, even though that determination is erroneous on the facts * * * the determination is res judicata between the parties. * * *.

"If the defendant appears in an action for the purpose of objecting that the court has no jurisdiction over him, he thereby submits to the court for its determination the question whether the court has jurisdiction over him. If the court erroneously determines that it has jurisdiction over the defendant, he has ground for reversal in an appellate court, and ground for carrying the case to the Supreme Court of the United States since a judgment rendered against him by a court having no jurisdiction over him deprives him of property without due process of law in violation of the provisions of the Fourteenth Amendment to the Constitution of the United States. If, however, he does not avail himself of these remedies * * * the defendant cannot thereafter successfully contend that the judgment was void, even though in fact the court had no jurisdiction over him. The defendant, having submitted the question of jurisdiction to the court, the court has jurisdiction to determine the question of its jurisdiction over the defendant, and the determination of that question is res judicata."

In the same Section it is also stated:

"Where an action is brought against a defendant over whom the court has no jurisdiction, and the defendant does not appear in the action and judgment is rendered against him by default, the judgment is void. * * *."

In the case of National Exchange Bank of Tiffin v. Wiley (1904), 195 U.S. 257, 25 S.Ct. 70, 49 L.Ed. 184, the plaintiff brought an action against the defendant

upon a judgment. The jurisdiction of the court which entered the judgment was based upon the appearance of an attorney in behalf of the defendant Wiley. He claimed that the appearance was unauthorized. The Court held that the judgment was subject to collateral attack on that ground. The Court stated (195 U.S. p. 268, 25 S.Ct. p. 74):

"In other words, the defendant Wiley could show collaterally that he was not legally before the court—as he was not in any just sense—if his appearance was entered and judgment confessed by one who had, in fact, at the time, no authority to do either; and, consequently, that the court was without jurisdiction to proceed except on legal notice to him or without his appearance in person or by an attorney authorized to represent him. If law and usage in Ohio were to the contrary, then, such law and usage would be in conflict with the Constitution of the United States; for it is thoroughly settled that a personal judgment against one not before the court by actual service of process, or who did not appear in person or by an authorized attorney, would be invalid as not being in conformity with due process of law."

It is clear that the ruling of the Florida Court on the motion of Mooney Aircraft to quash the service of process from which Mooney Aircraft took no appeal would be res judicata as to the validity of that service provided Richard H. Olsen had authority to appear for Mooney Aircraft. However, it is also clear that if he had no authority to appear for it the validity of the service of process would be subject to challenge in the present action.

■■■ It is well settled that it is presumed that an attorney has authority to appear for a party for whom he enters an appearance. Paradise v. Vogtlandische Maschinen-Fabrik (3d Cir. 1938), 99 F.2d 53, 55; Hidalgo County Drainage District No. 1 v. Magnolia Petroleum Co. (Tex.Civ.App.1932), 47 S.W.2d 875

(error refused); Sloan v. Jepson (1934), 217 Iowa 1082, 252 N.W. 535. The presumption is especially strong where it is sought to invalidate a judgment. Liken v. Shaffer (D.C.1946), 64 F.Supp. 432, 449. A party who asserts that the appearance of an attorney in its or his behalf was unauthorized has the burden of proof as to lack of authority. Paradise v. Vogtlandische Maschinen-Fabrik, supra; Kaufman v. Wolfson (D.C.1956), 137 F.Supp. 479. The presumption will prevail until overcome by clear and satisfactory evidence. Sloan v. Jepson, supra. In some cases it is stated that the presumption will prevail until conclusively rebutted. Hidalgo County Drainage District No. 1 v. Magnolia Petroleum Co., supra.

It does not appear that the previous relations between Mooney Aircraft and Richard H. Olsen were such as to give him implied authority to appear as attorney for it in an action or actions brought against it. It is the contention of the plaintiffs that Richard H. Olsen was given actual authority to appear by Richard Martin and Hal Rachal. Richard H. Olsen, whose testimony was presented by deposition, testified that he had actual authority to appear for Mooney Aircraft in the Florida action. During the period in question, Richard Martin was not in the employ of Mooney Aircraft and received no salary from it. He was a Vice President of Mooney Sales Company. He had an office in the place of business of Mooney Sales Company at Kerrville, Texas. He, among other duties, had supervision of the distribution in Florida of airplanes manufactured by Mooney Aircraft. It was heretofore noted that on March 18, 1960, Richard H. Olsen was served with notice of the Florida action as a resident agent of Mooney Aircraft. Richard H. Olsen's testimony appears by two depositions—one taken April 18, 1962, and one taken May 3, 1962. In the deposition taken on April 18, 1962, he testified, in substance, that following the service of notice upon him he contacted Richard Martin and was au-

thorized by him to appear for Mooney Aircraft. He did not refer to the matter of being authorized by Hal Rachal, the President, General Manager and general attorney of Mooney Aircraft, to appear for it. It is the contention of Mooney Aircraft that Richard Martin was lacking in authority to employ an attorney to appear in its behalf and that Richard Martin did not purport to do so. On May 3, 1962, as heretofore noted, Richard H. Olsen's second deposition was taken. Between the taking of his first deposition and the taking of his second deposition, the attorney for Mooney Aircraft had made available to the attorneys for the plaintiffs herein a letter written by Richard H. Olsen to Richard Martin on April 1, 1960. That letter is, in part, as follows:

"April 1, 1960

"Mr. Richard Martin,
"Vice President
"Mooney Sales Company
"Kerrville, Texas

"Dear Dick:

"As per our conversation this afternoon, I am enclosing herein a copy of the suit against us and Mooney Aircraft. I am of the opinion, according to the Florida law, that the service in this suit is improper and that Mooney is not considered a corporation doing business in the state of Florida. The only way that they could obtain service upon Mooney would be to transfer this action to a Federal Court and serve you in Kerrville, Texas.

"I would forward a copy of this suit to Hal [Rachal] as soon as possible for his opinion. Please advise his reactions immediately."

Following the receipt of that letter, Richard Martin sent the following memorandum to Hal Rachal:

"INTER-OFFICE MEMO
        "DATE  April 4, 1960
"TO:      Hal Rachal
"FROM:    R. S. Martin
"SUBJECT:
"Dick Olsen sent this copy of the suit covering the aircraft that was to-

taled by the Delray Beach Aviation Corporation when the fuel valve core alledgedly [sic] failed. These parts are supposed to now be in the possession of the insurance company.

"Dick Olsen would like to know if he should appear on behalf of Mooney Aircraft in order to show that Mooney cannot be filed against in the State of Florida. If you wish to return your reply to me for forwarding, I will handle as soon as received

                "RSM"

In his second deposition Richard H. Olsen impliedly abandoned any claim that he had been authorizd by Richard Martin to enter an appearance in behalf of Mooney Aircraft. In his second deposition he testified that Hal Rachal called him by long distance telephone and authorized him to enter a special appearance for Mooney Aircraft to question the service of process. He testified that the only communication he had from Hal Rachal in regard to the litigation was that telephone call. Hal Rachal testified orally at the trial as did Richard Martin. There is no question that Hal Rachal had authority to employ attorneys in behalf of Mooney Aircraft. Hal Rachal testified that he had never had any telephone conversation with Richard H. Olsen at any time and that he had met him once and that was at Kerrville, Texas, long prior to the period in question. He testified that he had never authorized Richard H. Olsen to appear for Mooney Aircraft in the Florida action.

On May 19, 1960, Richard H. Olsen filed the special appearance and motion to quash service in behalf of Mooney Aircraft. There were no written or telephone communications from Richard H. Olsen to Hal Rachal regarding the progress of the litigation. Mooney Aircraft put into evidence the record of all long distance calls charged to it during the month of April and up through May 19, 1960. That record does not disclose any long distance call to Richard H. Olsen during that period.

■ It is the view of the Court that Mooney Aircraft has met its heavy burden of proof as to the lack of authority of Richard H. Olsen to appear for it in the Florida action. Richard H. Olsen first claimed that he had been authorized to appear by Richard Martin. When the documentary evidence showed that Richard Martin had in fact merely referred the matter to Hal Rachal, Richard H. Olsen then claimed he had been authorized to appear by Hal Rachal in a long distance telephone conversation. Hal Rachal denied that he had any long distance telephone conversation with Richard H. Olsen during the time in question and the telephone records tended to support his denial. There was an absence of the communications with Hal Rachal as to the progress of the litigation following the claimed employment such as is usual where one attorney authorizes another to represent his client in out-of-state litigation. The oral testimony of Hal Rachal was direct, positive and credible as to his not having authorized Richard H. Olsen to appear for Mooney Aircraft in the Florida litigation.

■■ There are some other matters to be considered in this connection. As heretofore noted, Richard H. Olsen entered his appearance in behalf of Mooney Aircraft in the Florida action on May 19, 1960. Richard Martin testified herein, in substance, that on May 24, 1960, he telephoned him that Mooney Aircraft would not recognize his appearance in its behalf. In connection with the testimony of Richard Martin, Mooney Aircraft offered into evidence a memorandum made by Richard Martin of a telephone conversation with Hal Rachal about the matter. The exhibit was received subject to the objection. The Court is of the view that under the state of the record the exhibit was not admissible and hence is not taken into consideration by the Court. It appears that shortly after May 19, 1960, Mooney Aircraft knew that Richard H. Olsen had purported to enter an appearance in its behalf. The default judgment against Mooney Aircraft was entered on April 7, 1961. The plaintiffs argue that after Mooney Aircraft learned of the claimed unauthorized appearance in its behalf by Richard H. Olsen it should have done something about having the appearance withdrawn or vacated and that having failed to do so it ratified or acquiesced in the appearance. It was open to Mooney Aircraft to move the Florida Court to vacate the claimed unauthorized appearance. St. Lucie Estates v. Palm Beach Plumbing Supply Co. (1930), 101 Fla. 205, 133 So. 841. See, also, Annotation 64 A.L.R.2d 1424. If Mooney Aircraft had moved the Florida Court to vacate the claimed unauthorized appearance, the situation would have been such that a hearing would have had to been held and factual determination would have to been made by the Florida Court on the question of whether the appearance was in fact unauthorized. If the Florida Court denied the motion, it would seem that then the only remedy open to Mooney Aircraft would have been to appeal the ruling or be foreclosed to raise it later. It is clear from the record that Mooney Aircraft at all times was of the view that it was not subject to the jurisdiction of the Florida Court and that it did not want any action taken that might subject it to the jurisdiction of that Court. The Court is of the view and holds the fact that Mooney Aircraft did not move to vacate the appearance of Richard H. Olsen does not prevent it from collaterally attacking the judgment involved in the present action on the ground that the appearance of Richard H. Olsen was unauthorized.

■ In its brief Mooney Aircraft seems to claim that the circumstances in connection with the Florida litigation were such as to indicate collusion between the plaintiffs and Richard H. Olsen. In that connection Mooney Aircraft calls attention to the fact that, subsequent to the ruling of the Florida Court adjudging that it had jurisdiction over Mooney Aircraft, the plaintiffs dismissed the action as to Metropolitan Aircraft with which Richard H. Olsen was connected. The record does not disclose the reason or

reasons for that dismissal. Collusive conduct on the part of an attorney is not to be lightly inferred. The mere fact of dismissal would not in itself give rise to an inference of collusion. It would seem probable that the unauthorized appearance of Richard H. Olsen was due to an unwarranted assumption of authority on his part.

It is the alternative contention of the plaintiffs that even if the appearance of Richard H. Olsen in the Florida action was not authorized nevertheless the Florida Court acquired jurisdiction over Mooney Aircraft by service of process on Richard H. Olsen. It is the contention of the plaintiffs that the factual and legal situation was such that service of process as to Mooney Aircraft could be validly made by service on Metropolitan Aircraft. In the return of service heretofore set out, it is recited that the process was served upon Mooney Aircraft Corporation by serving "R. H. Olsen, Res. Agent." All that the record discloses as to the status of Richard H. Olsen at and preceding the service of process is that he was Vice President and general attorney for Metropolitan Aircraft. The record does not disclose anything as to his activities at and preceding the service of process. The record does not disclose that at and preceding the service of process he individually was a resident agent of Mooney Aircraft. Mooney Aircraft has not raised any question as to the return of service. The parties seem to have assumed that it was the Metropolitan Aircraft Corporation that was served with the process. This Court, therefore, assumes that the service of process was made upon Richard H. Olsen in his capacity as Vice President of the Metropolitan Aircraft Corporation.

It is the contention of the plaintiffs that Mooney Aircraft at the time of the service of process was doing business in the State of Florida and as such was subject to the jurisdiction of the Florida courts and that jurisdiction over it was acquired by a valid service of process in that state. A considerable portion of the briefs and arguments of the parties relates to those matters.

The United States Supreme Court has considered the matter of personam jurisdiction over foreign corporations in a number of leading cases. International Shoe Company v. Washington (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057; Travelers Health Association v. Virginia (1950), 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154; Perkins v. Benguet Consolidated Mining Co. (1952), 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485; McGee v. International Life Insurance Company (1957), 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; Hanson v. Denckla (1958), 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283. It is sometimes stated that personam jurisdiction exists as to a foreign corporation if it is doing business in the state but that such jurisdiction is lacking if the corporation is not doing business in the state. Such conclusionary statement leaves it still to be determined in each case whether the particular foreign corporation is doing business in the state. There are a multitude of cases involving the question as to what constitutes the doing of business in a state by a foreign corporation. In connection with that question there has arisen the question as to whether federal or state law is applicable. In the present case jurisdiction is based upon diversity of citizenship. The United States Supreme Court has not passed upon the question as to whether the doctrine of Erie R. Co. v. Tompkins (1938), 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, requires that state law be followed. It is the view of some courts that it does not. Jaftex Corporation v. Randolph Mills, Inc. (2d Cir. 1960), 282 F.2d 508, 512. See, in this connection, Green, Federal Jurisdiction In Personam Of Corporations And Due Process, 14 Vanderbilt Law Review 967, 978 (1961). However, the United States Court of Appeals for the Fifth Circuit is not in accord with that view. Connor v. New York Times Company (5th Cir. 1962), 310 F.2d 133, 134. See, also, Lone Star

Package Car Co. v. Baltimore & O. R. Co. (5th Cir. 1954), 212 F.2d 147; Smith v. Ford Gum & Machine Co. (5th Cir. 1954), 212 F.2d 581. The holding of the United States Court of Appeals is, of course, the determinative holding in the present case.

The leading United States Supreme Court cases heretofore cited manifested such a liberal trend in the matter of upholding state jurisdiction over nonresidents that it was the view of some that there was no longer any substantial restriction upon the states in connection with that jurisdiction. Chief Justice Warren in the majority opinion in the case of Hanson v. Denckla, supra, referred to the trend away from the earlier rigid rules in connection with state jurisdiction over nonresidents and then went on to state (357 U.S. p. 251, 78 S.Ct. p. 1238):

> "But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. * * * Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him. * * *"

The recent case of Waltham Precision Instrument Co. v. McDonnell Aircraft Corp. (1st Cir. 1962), 310 F.2d 20, involved service of process on a foreign corporation under a Massachusetts statute. The Court stated (310 F.2d p. 23):

> "Plaintiff argues at length that, under the facts of this case, there is no constitutional inhibition against bringing the defendant within the ambit of the Massachusetts statute. For this position it relies on the expanded reach of permissive state court jurisdiction marked out by International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and culminating in McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). While the trend is surely discernible, the Supreme Court has clearly indicated that in this area there still exists due process boundaries which cannot be trespassed. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). * * *"

For a discussion of the possible effect of Hanson v. Denckla, supra, on McGee v. International Life Insurance Company, supra, see Lone Star Motor Import, Inc. v. Citroen Cars Corp. (D.C.Texas 1960 Judge Ingraham), 185 F.Supp. 48.

It seems clear that in order for a state to exercise personam jurisdiction over a foreign corporation, the corporation must have or had certain minimal contacts with that state and that lacking such contacts the due process provision of the Fourteenth Amendment to the Constitution of the United States forbids the exercise of such jurisdiction. In litigation involving such jurisdiction, usually the first question presented is whether the state purported to exercise such jurisdiction under the circumstances presented. Where it is determined that the state has purported to exercise such jurisdiction, the question sometimes arises as to whether service of process was such as to bring a particular defendant within the jurisdiction of a particular state court.

The contacts of Mooney Aircraft with the State of Florida will next be considered. Those contacts center around Metropolitan Aircraft. Mooney Aircraft never qualified to do business in the State of Florida and it was never licensed to do business in that state. It never appointed an agent for the service of process in that state. On September 23, 1958, Mooney Aircraft entered into what was styled as "Distribution and Sales Agreement" with Metropolitan Aircraft. While it appears that Metropolitan Aircraft afterwards became in-

active, the Agreement was in full force and effect at and preceding the service of process. The Agreement is next set forth:

"———— DISTRIBUTOR AGREEMENT ————

FOR THE DISTRIBUTION AND SALE OF MOONEY AIRCRAFT

"MOONEY AIRCRAFT INCORPORATED
"KERRVILLE, TEXAS

"DISTRIBUTION AND SALES AGREEMENT

"MOONEY AIRCRAFT, Inc.
"Kerrville, Texas

"HEREBY APPOINTS Metropolitan Aircraft Corp.

"WHOSE ADDRESS IS 310 Biscayne Building  Miami, Florida

as Distributor only for MOONEY Aircraft and Accessories, subject to the terms of this agreement.

"SECTION I

"MOONEY AIRCRAFT, Inc. AGREES TO:

"1. Sell the MOONEY Aircraft models as listed below, as available, to the Distributor, at the wholesale prices, such prices being subject to change without notice.

"2. Supply advertising and promotion on a national and international basis through such mediums as considered best by MOONEY.

"3. Supply sales aids and materials, as available, at moderate cost to the Distributor.

"4. Maintain a service department in accordance with the terms of the accompanying Service Agreement.

"5. Maintain the standard manufacturer's warranty on all aircraft and parts made at MOONEY, as stated on the WARRANTY card supplied with each aircraft.

"6. Refrain from appointing any other distributors within the territory assigned in this agreement for the duration of this agreement. However, MOONEY AIRCRAFT Inc. reserves the right to sell any of its products directly, and in any location, for the purposes of promotion of MOONEY products; for experimental or developmental work; to Governmental bodies, to fleet buyers.

"SECTION II

"THE DISTRIBUTOR AGREES TO:

"1. Pay for MOONEY products ordered by him and to pay any account he has with MOONEY, according to the terms set forth on the invoice.

"2. Maintain service facilities in accordance with the terms of the accompanying Service Agreement.

"3. Provide adequate sales facilities, maintain sales staff and cover intensively and consistently through sales solicitation, advertising and promotional activities, the Distributor's territory, to wit:

"The state of Florida, excluding the counties of Escambia, Santa Rosa, Okaloosa, Walton, Holmes, Washington, Bay.

"In the state of Georgia: the southern counties bordered on the north by and including Miller, Mitchell, Coloquitt, Cook, Berrien, Atkinson, Ware, Brantley, Glynn.

"4. Identify himself as a MOONEY Distributor by owning at least one (1) MOONEY demonstrator aircraft of each model currently in production, and by adequate display of MOONEY signs and dealer aids as available from MOONEY.

"5. Engage in sales and promotional activities in adjoining territory not assigned to another MOONEY Aircraft Distributor and declared by MOONEY as 'Open Territory.'

"6. Solicit and appoint dealers and representatives within the assigned territory for the promotion of retail sales of new MOONEY AIRCRAFT.

"SECTION III

"THE PARTIES AGREE THAT:

"1. This agreement may be terminated by the Distributor by giving written notice to MOONEY AIRCRAFT, Inc., which termination shall become effective at the time said notice is postmarked.

"2. In the event of breach of contract, this agreement may be terminated by MOONEY AIRCRAFT, Inc. by giving written notice to the Distributor, at its address shown herein, which termination shall become effective at the time said notice is postmarked.

"3. This agreement may be terminated by MOONEY AIRCRAFT, Inc. at the expiration of the anniversary hereof, by giving written notice to the Distributor, at its address shown herein, postmarked thirty (30) days prior to such anniversary date.

"4. Upon termination of this agreement, the Distributor (as well as his Dealers and agents) shall remove all MOONEY signs, banners, displays, and all other MOONEY advertising and display material from his place of business and all other locations; shall destroy or return to MOONEY AIRCRAFT, Inc., upon request and as directed, such display and advertising material as may be MOONEY property and which is so designated by the labels or imprints thereon; shall discontinue advertising his place or places of business as being a MOONEY Aircraft Distributor and/or Dealer. Upon termination of this agreement, MOONEY AIRCRAFT, Inc. may exercise the right at its election, but shall not have the obligation, to repurchase any new or any unused MOONEY products in possession of the Distributor or his Dealers or on order at the factory at the time of such termination, at the price paid to MOONEY AIRCRAFT, Inc. by the Distributor.

"5. This Agreement is not transferable by the Distributor and is executed on this 23rd Day of September, 1958.

"DISTRIBUTOR      MOONEY AIRCRAFT, Inc.

"By /s/ Raymond K. Ferwerd      By /s/ Hal Rachal"

———————

There was also a Service Agreement which was subsidiary to the "Distribution and Sales Agreement." The plaintiffs call attention to certain "local acts" as having bearing upon the situation. Richard Martin, Vice President of the Mooney Sales Corporation, visited Metropolitan Aircraft from time to time. Richard Martin at one time attended an aviation show in Miami where he displayed aircraft and set up a mock-up of an airplane cabin. In the classified section of the Miami telephone directory the following appeared:

"MOONEY DISTRIBUTORS

Mark 20 – Mark 20A – Mark 21
World's Most Efficient Airplane
Metropolitan Aircraft Corp.
Bisc Bl...........FR 7–3736"

The plaintiffs also rely upon an advertisement in the February 1959 issue of the magazine, "Flying," advertising the Mooney planes. A portion of the advertisement was headed: "We, distributors and dealers of Mooney Aircraft, invite you to see and fly the Mark 20 and Mark 20A * * * and we assure our many customers of fast, efficient factory-like maintenance service." This was followed by the names and addresses of distributors in a great many states. In the list of distributors appeared the name of Metropolitan Aircraft Corporation. It appears that while the advertising was arranged for by Mooney Aircraft it was paid for by the dealers listed. In some states several distributors or dealers were listed. The Metropolitan Aircraft Corporation was the only distributor or dealer listed for the State of Florida. The

evidence apart from the Agreement and the evidence relating to so-called "local acts" bearing upon the activities of Metropolitan Aircraft and its relationship with Mooney Aircraft is not extensive. The record does not disclose the extent of the activities of Metropolitan Aircraft in Florida in connection with the airplanes manufactured by Mooney Aircraft. Neither Mooney Aircraft nor any of its officers owned any stock in Metropolitan Aircraft. None of Mooney Aircraft's officers or the members of its board of directors were officers or members of the board of directors of Metropolitan Aircraft. The airplane that crashed was sold to the Delray Beach Aviation Corporation by Metropolitan Aircraft at Miami, Florida. The airplane had been earlier purchased by Metropolitan Aircraft from Mooney Aircraft at its place of business at Kerrville, Texas, and paid for there. Under the Distribution and Sales Agreement, Mooney Aircraft reserved the right to make sales in Florida for certain purposes and to certain types of buyers. Mooney Aircraft did not exercise that right. Under the Distribution and Sales Agreement, Mooney Aircraft agreed that in the event of the termination of the Agreement it would repurchase from Metropolitan Aircraft any new or unused Mooney products in its possession at the time of the termination. Mooney Aircraft did not repurchase any airplanes from Metropolitan Aircraft under that provision. It is its contention that Mooney Aircraft had such control or right over Metropolitan Aircraft as to constitute the latter as its agent in fact. The fact that an agreement between a

manufacturer and a party designates the latter as a distributor or dealer is not determinative on the question of the existence of a principal-agent relationship. It may nevertheless be shown that in fact that manufacturer either exercised or had the right to exercise such control over such party as to make the relationship between them that of principal and agent. One of the leading cases in that connection is the case of Kahn v. Maico Company (4th Cir. 1954), 216 F.2d 233. In that case a resident dealer in Maryland entered into a franchise agreement with a foreign manufacturer. Later the question arose whether the manufacturer was subject to suit in Maryland. The Court was of the view that the resident dealer was as completely controlled by the manufacturer as if the resident dealer had been a mere selling agent. In that case the manufacturer even fixed the prices at which the resident dealer could charge. The Court held that the foreign manufacturer was subject to suit in Maryland. See, also, Florio v. Powder Power Tool Corp. (3d Cir. 1957), 248 F.2d 367, and Iliff v. American Fire Apparatus Company, Inc. (4th Cir. 1960), 277 F.2d 360. It appears from the cases that in passing upon the question as to whether a principal and agent relationship exists in relation to the manufacturer and a distributor there are certain features which, if present, indicate the absence of an agency relationship. Among these are: the distributor gets legal title and possession of the goods; the distributor becomes liable for an agreed price; the distributor can fix the price at which he sells; the distributor can sell without accounting to the manufacturer for the difference between what he receives and what he pays; the risk of loss of the goods after delivery to the distributor is upon him. In the Distribution and Sales Agreement between Mooney Aircraft and Metropolitan Aircraft, there are present all the features referred to which are indicative of the absence of the existence of a principal-agent relationship.

In the case of Minneapolis-Moline Company v. Purser (Tex.Civ.App.1962), 361 S.W.2d 239, p. 241, RNRE, the Court, in discussing the question of whether a local franchise dealer could be regarded as the agent of a foreign farm implement manufacturer, stated: "Agency is the creature of contract, either expressed or implied, * * *."

In the case of National Equipment Rental, Ltd. v. Szukhent (2d Cir. 1962), 311 F.2d 79, pp. 80, 81 (petition for certiorari granted April 22, 1963), 372 U.S. 973, 83 S.Ct. 1110, the Court stated:

"* * * Normally, an agency exists only if there has been a manifestation by the principal to the agent that the agent may act on his account, and consent by the agent so to act, Restatement Agency § 15, and the agent is subject to control by the principal, Restatement Agency § 1. * * *"

In the present case the plaintiffs claimed that the telephone listing and the advertisement listing Metropolitan Aircraft as a distributor of airplanes manufactured by Mooney Aircraft constituted a holding out of the latter as an agent of the former. In the case of Westerdale v. Kaiser-Frazer Corporation (1955), 6 N.J. 571, 80 A.2d 91, service of process was made upon Kaiser-Frazer automobile dealer, one Clark & Eig Motors, Inc., as an agent of the foreign corporation which manufactured the automobiles distributed by the dealer. The service of process was quashed. In the opinion the Court stated (6 N.J. p. 577, 80 A.2d p. 94):

"The fact that the showroom of Clark & Eig Motors, Inc. carried signs prominently displaying the name 'Kaiser-Frazer' and 'Kaiser-Frazer Authorized Service' is not the holding out by the Kaiser-Frazer Corporation of Clark & Eig Motors, Inc. as an agent but rather is of the type that is commonplace among all dealers who sell products which have a trade name carrying substantial good will. * * *"

In the present case the telephone listing and advertisement listing of Metropolitan Aircraft as a distributor of airplanes manufactured by Mooney Aircraft would seem to have the same status as that described by the New Jersey Court.

In the present case it is the view and the holding of the Court that the record does not disclose the existence of a consensual principal-agent relationship between Mooney Aircraft and Metropolitan Aircraft. It is the further view and holding of the Court that the evidence does not sustain the contention of the plaintiffs that there was a holding out that such relationship existed.

The holding that Mooney Aircraft did not in fact consent to Metropolitan Aircraft being its agent in the State of Florida is not determinative of the question as to whether Mooney Aircraft was subject to Florida jurisdiction. It seems clear that the older theory which measured the permissible extent of state judicial power over nonresidents by consent or related theories is no longer followed. State judicial power over nonresidents is now largely a matter of legislative enactment or enactments. The states have by legislative enactments provided that a certain local contact or local contacts by nonresidents shall subject them to local jurisdiction. The scope of such enactments is as broad as the permissible limits of due process. The jurisdiction over nonresidents provided for in those enactments is not based upon true consent but on imputed consent. In the case of Bagdon v. Philadelphia & Reading Coal & Iron Co. (1916), 217 N.Y. 432, 111 N.E. 1075, p. 1076, L.R.A. 1916F, 407, Judge Cardozo, in a related context, stated: "The distinction is between a true consent and an imputed or implied consent, between a fact and a fiction."

In the present case the plaintiffs, in support of their contention that Mooney Aircraft was subject to Florida court jurisdiction, rely upon certain Florida statutes. The plaintiffs assert that Florida has by those statutes brought foreign corporations whose situation is similar to that of Mooney Aircraft within the ambit of its jurisdiction and that Mooney Aircraft was by the service of process made upon Metropolitan Aircraft properly subjected to that jurisdiction.

Section 47.17, Florida Statutes, F.S.A., relates to the service of process on corporations. It provides for the service of process upon any "business agent" of the corporation resident in the state. It further provides that in the case of foreign corporations service of process may be made upon any agent transacting business for it in the state. It further provides that the provisions of Section 47.17 shall be cumulative to all existing laws. Section 47.30, Florida Statutes, F.S.A., provides in detail for the service of process on nonresidents by service of process upon the Secretary of State.

Section 47.17, as noted, provides that in the case of foreign corporations service of process may be made upon any "business agent" of the corporation resident in the state or upon any agent transacting business for it in the state. In the case of Grobark v. Addo Machine Company (1959), 16 Ill.2d 426, 158 N.E.2d 73, which manufactured adding machines which it sold to local distributors, the Court held that local jurisdiction over the manufacturer was lacking. It stated (158 N.E.2d p. 79):

"* * * They [the distributors] were not transacting business for the defendant [manufacturer] in Illinois; they were transacting business for themselves. * * *"

The record in the present case discloses that Mooney Aircraft Corporation was transacting business for itself in the State of Florida. Thus, Metropolitan Aircraft was not in fact the "business agent" of Mooney Aircraft or an agent transacting business for it in Florida within the provisions of Section 47.17. However, that finding is not determinative of the question as to whether Mooney Aircraft was subject to local jurisdiction and was subjected to that jurisdiction because there is another

Florida statute which is of great importance. That statute will next be considered.

Section 47.16, Florida Statutes, F.S.A. provides as follows:

"47.16 Service of process upon non-residents engaging in business in state

"(1) The acceptance by any person or persons, individually, or associated together as a copartnership or any other form or type of association, who are residents of any other state or country, and all foreign corporations, and any person who is a resident of the state and who subsequently becomes a non-resident of the state or conceals his whereabouts, of the privilege extended by law to nonresidents and others to operate, conduct, engage in, or carry on a business or business venture in the state, or to have an office or agency in the state, shall be deemed equivalent to an appointment by such persons and foreign corporations of the secretary of state of the state as the agent of such persons or foreign corporations upon whom may be served all lawful process in any action, suit or proceeding against them, or either of them, arising out of any transaction or operation connected with or incidental to such business or business venture, and the acceptance of such privilege shall be signification of the agreement of such persons and foreign corporations that any such process against them or either of them, which is so served shall be of the same legal force and validity as if served personally on such persons or foreign corporations. Service of such process shall be in accordance with and in the same manner as now provided for service of process upon nonresidents under the provision of § 47.30. Provided that if a foreign corporation has a resident agent in the state, service of process shall be had upon such resident agent as now provided by statute.

"(2) Any person, firm or corporation which through brokers, jobbers, wholesalers or distributors sells, consigns, or leases, by any means whatsoever, tangible or intangible personal property, to any person, firm or corporation in this state, shall be conclusively presumed to be operating, conducting, engaging in or carrying on a business or business venture in this state. As amended Laws 1951, c. 26657, § 1; Laws 1955, c. 29615, § 33; Laws 1957, c. 57–747, § 1."

Subsection (1) of the Section was enacted by the 1951 Florida Legislature. Subsection (2) was enacted by the 1957 Florida Legislature (Laws 1957, c. 57–747). This latter enactment contained the following Preamble:

" 'Whereas, persons, firms and corporations in other jurisdictions are directly or indirectly furnishing millions of dollars worth of tangible and intangible personal property to persons, firms and corporations in this state each year; and

" 'Whereas, litigation in both tort and contract frequently arises out of the purchase, lease, consignment, use and consumption of such property each year; and

" 'Whereas, the cost and expense of going to other jurisdictions, both national and international, frequently has the practical effect of denying all rights and remedies regarding such purchase, lease, consignment, use and consumption; and

" 'Whereas, it is just and fair that such litigation be conducted in this state rather than in a foreign jurisdiction, Now, Therefore.' "

In Comment, 13 Miami Law Review 205 (1958), in discussing Section 47.16, the writer stated (p. 212):

"The jurisdictional basis in the Florida statute is probably as comprehensive as that thus far enacted by any other state. * * *."

The writer further stated on the same page:

"The comprehensive scope of the Florida statute has been matched by the liberality of the Florida Supreme Court in its construction and application. * * *."

█ The plaintiffs cite Subsection (2) of Section 47.16, heretofore set out, which provides, in substance, that a foreign corporation which through distributors sells personal property in the state shall be deemed to be doing business in the state for the purpose of service of process. As heretofore noted, Subsection (2) was added to Section 47.16 in 1957. It was the evident purpose of the Florida Legislature by doing so to give a wider scope to the statute than was given by the enactment in 1951 of what is now Subsection (1) of Section 47.16. In considering a state statute relating to local jurisdiction over foreign corporations, the decisions of the state courts are looked to in order to ascertain whether those courts give full thrust to the apparent scope of the statute. Waltham Precision Instruments Co. v. McDonnell Aircraft Corp. (1st Cir. 1962), 310 F.2d 20, 23.

The decisions of the Florida Supreme Court relating to Section 47.16 were made in cases which arose when that Section consisted only of what is now Subsection (1) of that Section.

The first and leading Florida Supreme Court case relating to Section 47.16 is the case of State ex rel. Weber v. Register (1953), 67 So.2d 619. Weber, a nonresident, owned an orange grove in Florida which he operated as a business venture. He listed the orange grove for sale with one Driver, a Florida real estate broker. Subsequently Driver brought an action in Florida against Weber to recover a commission allegedly due him in connection with the transaction. Service of process as to Weber was made by service on the Secretary of State. Weber challenged the jurisdiction of the Florida Court. He asserted that if it was deemed that Section 47.16 was applicable in his situation, then it was lacking in due process and hence was unconstitutional. The Florida Supreme Court held that the listing of the orange grove for sale was not part of the business of operating the orange grove but that the purchase of the orange grove and the listing of it for sale constituted a "business venture" within the scope of Section 47.16. The Court held that Weber was subject to the jurisdiction of the Florida Court. The Court overruled his challenge to the constitutionality of Section 47.16.

In the case of State ex rel. Guardian Credit Indemnity Corp. v. Harrison (1954), 74 So.2d 371, the Florida Supreme Court held that a foreign corporation engaged in the sale of "retail credit discount" warranties in Florida by means of so-called brokers was engaged in a business venture in Florida within the scope of Section 47.16 and that Florida Court jurisdiction over it was properly acquired by service on the Secretary of State.

In the case of Wm. E. Strasser Construction Corp. v. Linn (Fla.1957), 97 So.2d 458, the situation was that individual nonresidents acquired land in Florida and entered into a construction contract for the building of an apartment house on the land. The contractor claimed that they were indebted to him for breach of contract and brought an action against them in Florida. Service of process in the action was made upon them by serving the Secretary of State. The Florida Supreme Court held that the Florida Court had jurisdiction over the nonresident owners.

In the case of Mason v. Mason Products Co. (1953), 67 So.2d 762, the Florida Supreme Court held that the relationship of a particular salesman to a foreign corporation was not such as to constitute him a "business agent" of the corporation for the purpose of service of process under Sections 47.17 and 47.16. The Court stated (67 So.2d p. 763):

"Each case of this kind must rest on its own bottom for the simple reason that whether service is valid

depends on what the facts are.
* * * "

The District Courts of Appeals are Florida intermediate appellate courts. The scope of Section 47.16 has been considered by them in several cases. Among those cases are Continental Copper & Steel Industries, Inc. v. E. C. "Red" Cornelius, Inc. (Fla.App.1958), 104 So.2d 40; Oxley v. Zmistowski (Fla.App. 1961), 128 So.2d 186; Woodring v. Crown Engineering Co. (Fla.App.1962), 141 So.2d 816; Forston v. Atlantic Engineering & Mfg. Corp. (Fla.App.1962), 143 So.2d 364. In all of those cases the question was whether a nonresident defendant had engaged in a business venture in Florida within the scope of Section 47.16(1). In each of those cases except the case of Continental Copper & Steel Industries, Inc. v. E. C. "Red" Cornelius, Inc., supra, the factual situation was not sufficiently similar to that in the present case to be of assistance herein.

The case of Continental Copper & Steel Industries, Inc. v. E. C. "Red" Cornelius, Inc. will next be considered. The relationship of the parties was stated by the Court as follows (104 So.2d p. 40):

"The appellant is a manufacturer of electrical cable with its factories and principal offices outside the state of Florida. The appellee, Florida Electric Supply, Inc., is a wholesale dealer in electrical cable in Dade County, Florida, and appellee, E. C. 'Red' Cornelius, Inc., is an electrical contractor. Cornelius, through the appellee, Florida Electric Supply, Inc., placed an order and purchased electrical cable from the appellant, * * *."

The cable proved to be defective and Cornelius brought an action in Florida against the manufacturer and the wholesaler for breach of implied warranty. The manufacturer was served with process as one engaged in a "business venture" in Florida within the provisions of Section 47.16. The manufacturer challenged the jurisdiction of the court. The trial court overruled that challenge. On appeal the action of the trial court was sustained. It appears that the wholesaler defended on the ground that Cornelius could not recover against it for breach of warranty because privity of contract was lacking. The Court stated (104 So. 2d p. 41):

"Two substantial questions are raised by this appeal. First, whether the appellant, a foreign corporation, engaged in a 'business venture' in the state of Florida within the meaning of § 47.16, Fla.Stat., F.S.A., thereby subjecting itself to substituted service of process, and second, whether privity of contract is a necessary prerequisite for recovery upon an implied warranty. The trial judge answered the first question affirmatively and the second in the negative. We conclude that he was correct in both instances.

"On the first question as to appellant's amenability to suit in Florida under § 47.16, supra, the trial judge was called upon to decide as a question of fact whether the proofs offered were sufficient to establish that appellant engaged in a business venture in the state of Florida within the meaning of the statute. The record discloses proofs sufficient to support his conclusions. See State ex rel. Guardian Credit Indem. Corp. v. Harrison, Fla.1954, 74 So.2d 371."

The opinion in that case does not disclose the exact nature of the relationship between the resident wholesaler and the foreign manufacturer other than as above stated in the portion of the opinion set forth. The rationale of the holding of the Court in that case would seem to be that a foreign corporation which sells personal property to a resident of Florida is engaged in a "business venture" in that state within the provisions of Section 47.16(1). The factual situation in that case differs from that in the present case in that in the present case there is the interposition of an independent distributor or dealer entrepreneur between the foreign manufacturer and the resident purchaser

All of the Florida cases heretofore cited were cases in which the service of process was made prior to Subsection (2) being added to Section 47.16. However, in the case of Fawcett Publications, Inc. v. Rand (Fla.App. Third District 1962), 144 So.2d 512, the service of process was made after that addition. In that case one Rand, a resident of Florida, brought an action in Florida against Fawcett Publications, a foreign corporation, for an alleged libel contained in a magazine published by it. The Fawcett Publications had not been authorized to do business in Florida and maintained no offices in that state. It had its offices at Greenwich, Connecticut. Orders for magazines published by it were received by it at its offices in Connecticut from independent wholesalers and distributors who purchased the magazines for resale to the general public in Florida. Service of process was made upon the Secretary of State. Fawcett Publications challenged the jurisdiction of the court. The plaintiff claimed that Fawcett Publications was subject to local jurisdiction under Subsection (2) of Section 47.16 in that it sold personal property in the state "through * * * wholesalers or distributors." The trial court overruled the jurisdictional challenge. On appeal that action of the trial court was reversed. The Florida Appeals Court first discussed several of the United States Supreme Court cases dealing with the matter of minimal contacts of nonresidents in connection with the matter of local jurisdiction. The Court then referred to Subsection (2). It stated (144 So.2d p. 514):

"Since this statute provides a method of substituted service of process in lieu of personal service, it must be strictly construed, and one invoking its provisions has the burden of presenting a situation that clearly justifies its application. * * *"

The Court further stated on the same page:

"In order to authorize service under § 47.16(1), supra, upon the Secretary of State as provided by § 47.30, the party attempting to perfect such service must demonstrate either (1) that the foreign corporation has some degree of control over the personal property referred to in § 47.16(2), supra, in the hands of the 'brokers, jobbers, wholesalers or distributors' selling or distributing the personal property in this State or (2) that the foreign corporation has some degree of control over the 'brokers, jobbers, wholesalers or distributors' selling or distributing the personal property in this State."

The Court held that the local court lacked jurisdiction over Fawcett Publications. Chief Judge Tillman dissented. He stated (144 So.2d p. 515):

"It is my view that the distribution of magazines to wholesalers who are expected to place them on stands for sale constitutes doing business in this State. Continental Copper & Steel Industries, Inc. v. E. C. 'Red' Cornelius, Inc., Fla.App.1958, 104 So.2d 40; Oxley v. Zmistowski, Fla. App.1961, 128 So.2d 186."

In the case of Fawcett Publications, Inc. v. Brown (Fla.App. Second District 1962), 146 So.2d 899, the case of Fawcett Publications, Inc. v. Rand, supra, was cited and impliedly followed. The case of Jenkins v. Fawcett Publications, Inc. (D.C.Fla.1962), 204 F.Supp. 361, involved the same defendant as was involved in the case of Fawcett Publications, Inc. v. Rand, supra. The former case was decided several months prior to the latter case. The case of Jenkins v. Fawcett Publications, Inc., supra, also had to do with the question of jurisdiction under Section 47.16. Jenkins, a resident of Florida, brought an action in federal court in Iowa against Fawcett Publications for invasion of his right of privacy by an item contained in a magazine published by it. Service of process was made on the Secretary of State. The factual situation as to the distribution of the magazines published by Fawcett Publications was the same as that in the

case of Fawcett Publications, Inc. v. Rand, supra. The district court sustained the motion of Fawcett Publications to quash the service of process. The service of process was made after Subsection (2) had been added to Section 47.16. The Court stated (204 F.Supp. p. 363):

"In order to determine whether this Court has jurisdiction over the person of defendant, acquired through substituted service of process, it must first be determined if the defendant was 'carrying on a business or a business venture' in the State of Florida. If not, then the question is whether in dealing through the news dealers in the State of Florida defendant was selling through 'wholesalers or distributors' within the meaning of Florida Statutes thus giving effect to the conclusive presumption that defendant was carrying on a business or a business venture in the State of Florida.

"Florida Statutes, Section 47.16, F.S.A., provides a method of substituted service in lieu of personal service. One invoking the provisions of this statute carries the burden of presenting facts which clearly justify its applicability, for this statute is strictly construed. * * *"

The Court goes on to state (204 F.Supp. p. 364):

"This Court finds no authority in the Florida Statutes upon which to predicate a holding making every manufacturer whose goods are ultimately sold in Florida by independent stores, whether selling wholesale or distributing retail, amenable to substituted service of process in the courts of the State. * * *"

In connection with the situation of a foreign corporation distributing its products through distributors or dealers, certain cases are of interest. In the case of Cannon Manufacturing Company v. Cudahy Packing Company (1925), 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634, the United States Supreme Court held that a foreign corporation which sold and distributed its products in the State of North Carolina through a wholly owned subsidiary was not amenable to suit in that state since the separate identities of the two corporations had been sustained and the activities within the state were actually carried on by the subsidiary. The rule in that case is commonly referred to as the Cannon rule. It has been generally followed. See Harris v. Deere & Company (4th Cir. 1955), 223 F.2d 161. In the case of Berkman v. Ann Lewis Shops (1957), 246 F.2d 44, the United States Court of Appeals for the Second Circuit had before it the question as to the effect of Subsection (1) of Section 47.16, Florida Statutes, F.S.A., on the Cannon rule. In that case the situation was that Ann Lewis Shops, a foreign corporation, had a wholly owned subsidiary. That subsidiary was engaged in business in Florida. A resident of Florida brought an action in Florida against both the parent and subsidiary corporations. As to the parent corporation, service of process was made on the Secretary of State. Judgment by default was rendered against it. The plaintiff then brought an action in New York on that judgment. The parent corporation challenged the jurisdiction of the Florida court to render the judgment. The plaintiff contended that the parent corporation came within the ambit of Section 47.16, Florida Statutes, F.S.A., in that by its subsidiary it was engaged in a "business venture" in Florida within the scope of that Section. At the time the service of process was made, Section 47.16 consisted only of what is now Subsection (1) of that statute. The Court discussed the Florida statute and a number of Florida decisions, including the decision of the Florida Supreme Court in the case of State ex rel. Weber v. Register, supra. The Court was of the view that it could not be said that the Florida Legislature, by the language used by it in Section 47.16, intended to depart from the Cannon rule and that such being the case the Florida Court was lacking in

jurisdiction to render the judgment declared on. Near the time when the United States Court of Appeals rendered its decision, the Florida Legislature added Subsection (2) to Section 47.16 with the stated purpose of widening its scope. On its face Subsection (2) would bring within the ambit of Florida jurisdiction not only those foreign corporations which distribute their products in Florida through subsidiary corporations but also those foreign corporations which distribute their products through independent distributors or dealers. However, as heretofore noted, in the case of Fawcett Publications, Inc. v. Rand, supra, a Florida Court of Appeals held that in order to bring a foreign corporation which distributed its products in Florida through independent dealers within the ambit of Subsection (2) it must be demonstrated that it had some degree of control of the personal property in the hands of such a dealer or over the dealer.

In the present case the plaintiffs have not demonstrated that Mooney Aircraft had such degree of control over the personal property in the hands of Metropolitan Aircraft or over Metropolitan Aircraft as would bring Mooney Aircraft within the ambit of Subsection (2). Therefore, the holding in the case of Fawcett Publications, Inc. v. Rand, supra, could be regarded as determinative of the jurisdictional question here presented. However, in view of the liberal attitude shown by the Florida Supreme Court as to the scope of Section 47.16 and in view of the liberal attitude of the United States Supreme Court in regard to state power over nonresidents, it cannot be said with absolute assurance that it might not later be authoritatively held that Subsection (2) of Section 47.16 does, and properly so, bring within its ambit foreign corporations distributing their products in Florida through independent distributors or dealers. Because of another feature of the present case, it is the view of this Court that it is not necessary for it to pass upon the question as to whether the holding in the case of Fawcett Publications, Inc. v. Rand, supra, is determinative on the question of jurisdiction over Mooney Aircraft.

It was heretofore noted that in order for a local court to render a valid judgment against a foreign corporation, such corporation was not only to be subject to local jurisdiction but it must also have been properly subjected to such jurisdiction by a valid service of process. Subsection (1) of Section 47.16 provides that as to nonresidents within the scope of that Section service of process may be made upon the Secretary of State. Section 47.30 provides in detail how such service shall be made. The last sentence of Subsection (1) provides that if a corporation has a resident agent in the state the service of process shall be made upon that agent. In the present case, different from most of the Florida cases cited, the service of process as to the foreign corporation, Mooney Aircraft, was not made by service of process on the Secretary of State. It was made upon an independent distributor or dealer, i. e., Metropolitan Aircraft Corporation, a separate corporate entity. In a Note in 10 Florida Law Review 345 (1957), the writer, in discussing Section 47.16, stated (p. 353):

"The greatest difficulty arises in a situation in which a plaintiff is faced with the choice between serving a resident agent, when one is available, and the Secretary of State. The last sentence of section 47.16(1) seems to make service on the resident agent mandatory, thus invalidating service on the Secretary of State when an agent is available. On the other hand, jurisdiction over the foreign corporation cannot be obtained through service on its resident agent unless the relationship between the corporation and the agent is such as to create a 'legal or moral duty on the part of the [agent] to report and properly handle a summons served upon him as agent of' the foreign corporation. Either choice, if the wrong one, will

apparently result in the case being dismissed for lack of jurisdiction over the defendant."

Absent any agreement, express or implied, between a foreign corporation and a local independent dealer that the latter is to be considered the agent of the former for the service of process, and absent any statutory provision to the same effect, it cannot be said that such local distributor is under a moral and legal duty to the foreign manufacturer in connection with process served on it addressed to that manufacturer. It is well known that local independent retail merchants purchase products from a multitude of foreign corporations. Nothing else appearing, it cannot be said that such merchants would have the duty and responsibility of taking definite action in connection with any process served on them addressed to the foreign manufacturers. Such merchants might well take definite action to protect the interests of the foreign manufacturers in the event such process is served upon them addressed to those manufacturers. However, it would seem that they would not violate any duty owed to such manufacturers if they discarded or otherwise ignored such process. Where a process addressed to a foreign manufacturer is served on a local person or entity who is subject to the control of the former and who has a certain business stature in relation to the former, it will be implied that such person or entity has the duty and responsibility of taking proper action in connection with the process. In the case of Mason v. Mason Products Co., supra, the Florida Supreme Court held that a part-time commission agent lacked the necessary relationship to and business stature as to a foreign manufacturer to make it his duty to act in connection with process addressed to the foreign corporation. In the case of Jansma Transport, Inc. v. Torino Baking Company (1960), 27 Ill. App.2d 347, 169 N.E.2d 829, p. 831, the Court states:

"The character of agency for service of process has not been precisely defined. In 1 Nichols, Illinois Civil Practice, ch. 24, sec. 597 (1940), page 352, the author says:

" 'It would seem that if an agent is served, he must be one whose connection with the company is such, or whose employment is of such character that he impliedly had authority to receive process, and would be likely to inform the corporation of service of summons. * * * ' "

See, also, Spencer Concrete Products Co. v. City of Spencer (Iowa 1962), 116 N.W. 2d 455, 459, and De Claire Mink Ranches v. Federal Foods, Inc. (D.C.1961), 192 F.Supp. 148.

It was heretofore noted that in the present case the plaintiffs did not demonstrate that Metropolitan Aircraft was in fact an "agent" or "business agent" of Mooney Aircraft within the scope of Section 47.17 relating to substituted service on foreign corporations. Therefore, authority for the service of process on Metropolitan Aircraft addressed to Mooney Aircraft would have to be found elsewhere. The only other place where such authority might possibly be found would be in Section 47.16. If it be assumed that Mooney Aircraft by the distribution of its product through Metropolitan Aircraft was doing business in the state within the scope of Section 47.16, and if it be further assumed that that Section by implication authorized service of process on independent dealers distributing the products of a foreign manufacturer, there would still have to be considered the problem next referred to.

In the case of Wuchter v. Pizzutti (1928), 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446, there was under consideration a state statute which provided that in actions by residents of the state against nonresidents for personal injuries resulting from the operation of the latter of their motor vehicles in the state service of process could be made on the Secretary of State as their agent. The statute did not contain any provision requiring that official to give nonresidents notice that such action had been

commenced. The Court held that because of such lack the statute offended due process.

In the present case Mooney Aircraft had actual notice of the action and did receive copies of the summons and complaint. In the case of Wuchter v. Pizzutti, supra, the nonresident motorist did in fact receive actual notice of the action in a manner not directed by the statute. The plaintiff in that case contended that since the defendant had actual notice of the action he was subject to local jurisdiction. The United States Supreme Court held that the fact that the nonresident defendant was given actual notice of the action did not change the situation. In the case of In re Lambert (1901), 134 Cal. 626, 66 P. 851, 55 L.R.A. 856, the pertinent statute contained no requirement for notice to a party but notice was in fact given to him. The Court held that the notice given was ineffective. The Court stated (66 P. 854):

" * * * In the absence from the statute of any requirement of notice to the person, any notice that might be given him would be without legal force and authority, and consequently, whether acted upon by him or disregarded, the proceeding would be equally ineffective. * * * 'It is not what has been done, or ordinarily would be done, under a statute, but what might be done under it, that determines whether it infringes upon the constitutional right of the citizen. The constitution guards against the chances of infringement.' Bennett v. Davis, 90 Me. [102] 105, 37 Atl. [864], 865."

Therefore, if it be assumed that Section 47.16 by implication makes a local independent dealer who sells products purchased from a foreign corporation an agent for service of process upon such corporation the statute would not suffice, for it does not impose any duty or responsibility on such independent dealer to take any action in connection with the process. The Florida statute providing for service on the Secretary of State is not subject to that defect. However, as heretofore noted, the plaintiffs in the present action did not serve process on the Secretary of State.

The case of Miklos, et al. v. Liberty Coach Co. (1958), 48 N.J.Super. 591, 138 A.2d 762, is of interest. Liberty Coach Company, an Indiana corporation, was a manufacturer of home trailers. The plaintiffs purchased one of its trailers from the Bordentown Trailer Sales, Inc., a New Jersey corporation, doing business as a distributor at Bordentown, New Jersey. The plaintiff commenced an action in New Jersey against Liberty Coach Company and the distributor, Bordentown Trailer Sales, Inc., for breach of warranty. Service of process was made on the Liberty Coach Company by serving one Buettner, President of the Bordentown Trailer Sales, Inc. Liberty Coach Company challenged the jurisdiction of the New Jersey Court and that challenge was sustained. The Court, after referring to the provisions of New Jersey law (R.R. 4:4–4(d)) relating to the service of process upon a foreign corporation, found that service did not provide for the service of process that was made. The Court stated (138 A.2d p. 768):

"Plaintiff is here contending for the broadened right of the State to hold amenable to process foreign corporations doing business here, by permitting service on persons other than those mentioned in R.R. 4:4–4 (d)—in this case, one who is a dealer in the product of the foreign corporate manufacturer. The rule does not yet so provide, and only through amendment could service on Bordentown bring Liberty before the court. * * * "

Under the present decisions of the Florida courts Mooney Aircraft at the time in question was apparently not within the ambit of Section 47.16 conferring local jurisdiction over foreign corporations. If it was, then it was not properly subjected to that jurisdiction by the process served on Metropolitan Aircraft. It was heretofore held

that jurisdiction over Mooney Aircraft was not acquired by the appearance of Richard H. Olsen.

It is the holding of this Court that the Florida Court which rendered the judgment declared on by the plaintiffs in this case lacked jurisdiction to render that judgment.

It is hereby ordered that judgment herein shall be entered in favor of the defendant, Mooney Aircraft, Inc.

It is further ordered that the foregoing shall constitute the findings of fact, conclusions of law, and order for judgment in this case. Rule 52(a), Federal Rules of Civil Procedure.