HABEEB WYSHAK *vs.* ANACONDA COPPER MINING COMPANY.

Middlesex.   October 2, 1951. — January 4, 1952.

Present: QUA, C.J., WILKINS, SPALDING, & WILLIAMS, JJ.

*Trustee Process. Jurisdiction,* Foreign corporation. *Corporation,* Foreign corporation.

Mere solicitation of business in this Commonwealth by a foreign corporation does not constitute having "a usual place of business" here within G. L. (Ter. Ed.) c. 246, § 1, as amended.

A foreign corporation had "a usual place of business in" the Commonwealth and was subject to summons as trustee under G. L. (Ter. Ed.) c. 246, § 1, as amended, where it appeared that the corporation had a substantial office here with a staff engaged in or from such office in the solicitation of orders for its products, in promotional work, and in the investigation of and correspondence concerning complaints about its products.

CONTRACT OR TORT commenced by trustee writ in the Superior Court dated August 10, 1950.

Answers in abatement by the defendant and by the trustee were heard and sustained by *O'Brien,* J.   The plaintiff alleged exceptions.

*R. H. Wyshak,* for the plaintiff.

*T. Chase,* (*M. C. Gogan* with him,) for the defendant and the trustee.

WILKINS, J.   In this action of contract or tort commenced by trustee process against Anaconda Copper Mining Company, a Montana corporation having no usual place of business in this Commonwealth, the writ names American Brass Company, a Connecticut corporation, as trustee. The declaration alleges that the plaintiff, a resident of Newton, is a shareholder of Anaconda, and seeks to recover damages for the retention and withholding of cash dividends declared by Anaconda.   The alleged trustee filed an answer in abatement setting forth that it is a Connecticut corporation, that its sole business in Massachusetts is in connection

with soliciting orders in interstate commerce, and that it has no usual place of business here. Anaconda also filed an answer in abatement on the ground that it was not engaged in any business in this Commonwealth, and that the trustee was not subject to the service of process here, so that the defendant had no goods, effects, or credits in the hands of the trustee subject to the jurisdiction of the court. An order was entered sustaining both answers in abatement, and the plaintiff excepted.

General Laws (Ter. Ed.) c. 246, § 1, as appearing in St. 1938, c. 303, § 1, as amended by St. 1943, c. 17, § 1, in part provides: "All personal actions . . . [with immaterial exceptions] may be commenced by trustee process, and any person may be summoned as trustee of the defendant therein . . . . An individual who is not an inhabitant of the commonwealth, or a foreign corporation or association, shall not be so summoned unless he or it has a usual place of business in the commonwealth." The question is whether the American Brass Company on the evidence should have been found to have a usual place of business in this Commonwealth so that it could be summoned as trustee under this statute.

The only witness was the district sales manager of the American Brass Company, who was called by the trustee. A summary of his testimony follows. His office is in the Kendall Building at 238 Main Street, Cambridge, and service of the writ was made upon him. The office consists of from two to three thousand square feet of space, which is divided into two private offices and an outside office. There are there desks, files, typewriters, and the usual office furniture, all owned by American Brass. There are three girls, who answer telephones and do stenographic work, six outside salesmen, and one inside salesman, who solicits orders by telephone. American Brass has a lease of the premises which was executed at the main office in Waterbury, Connecticut. The rent is paid by check mailed from Connecticut. No books of account are kept here. The files contain correspondence regarding orders origi-

nating here and expense account records. The business here consists of the solicitation of orders and also promotional work. The salesmen get in touch with contractors and attempt to convince them of the superiority of American Brass and Anaconda products, so that when the time comes they will order them. The territory covered by this district sales office includes New Hampshire, Maine, and most of Massachusetts. Approximately fifty per cent of the orders from this territory come into the office; the remainder go directly to the mills, all of which are located outside of this Commonwealth. If a salesman is calling on a customer, he will take his order and tell him to mail it to Cambridge. It will then be forwarded to Connecticut ordinarily, but if the order is for a material which is made at a mill in Detroit, the order will be forwarded there directly. The Cambridge office has no authority to accept orders. These must be accepted at the mill, where they are acknowledged directly to the customer. Orders are filled by shipment from the mill to the customer. When an order is accepted, a copy of the acknowledgment is sent to the Cambridge office. There are no inventory, storage, or delivery facilities in Massachusetts. All billing is done by the mill directly to the customer. There is no bank account here in the name of American Brass. There is an expense account in the witness's name for travel and entertainment of customers, from which small expenditures are made for office incidentals, such as policemen's ball tickets, stamps, and the like. The salaries of the employees are paid from Connecticut. No collections are made. If a customer should send a payment to Cambridge, it is forwarded to Connecticut. In the event of a complaint, the salesman for the account makes an investigation, and reports the facts to the Connecticut office for disposition. He cannot compromise a claim or authorize the return of goods. The trustee's letterhead used in correspondence is, "The American Brass Company, 238 Main St., Cambridge 42, Mass." The letterhead used in negotiation of orders and for quotations has in addition a provision that all contracts are sub-

ject to approval in Waterbury, Connecticut. The building directory at 238 Main Street lists American Brass Company as being in room 405. The door to room 405 lists American Brass Company as an occupant. The Boston classified telephone directory under the heading "Copper" lists American Brass Company as a purveyor of Anaconda copper and copper alloy products at 238 Main Street. The office has nothing to do with advertising American Brass products. A personal property tax on the office furniture was paid by American Brass when the offices were in Boston.

There is no decision of this court arising under the statute relating to trustee process here concerned. But in *Thurman* v. *Chicago, Milwaukee & St. Paul Railway*, 254 Mass. 569, under a somewhat similar statute relating to service upon foreign corporations,[1] it was held that the simple solicitation of business by such a corporation did not constitute such a doing of business as to render it subject to the service of process, and that that statute should not be so interpreted as to authorize it. Apart from that statute, the general statement has often been made that more than mere solicitation is necessary to furnish a basis for the effective service of process. *Reynolds* v. *Missouri, Kansas & Texas Railway*, 224 Mass. 379, 386. *Atlantic National Bank* v. *Hupp Motor Car Corp.* 298 Mass. 200, 206. *Green* v. *Chicago, Burlington & Quincy Railway*, 205 U. S. 530, 533–534. *Philadelphia & Reading Railway* v. *McKibbin*, 243 U. S. 264, 268. *People's Tobacco Co. Ltd.* v. *American Tobacco Co.* 246 U. S. 79, 87. *Davis* v. *Farmers Co-operative Equity Co.* 262 U. S. 312, 315. *Pulson* v. *American Rolling Mill Co.* 170 Fed. (2d) 193, 194 (C. A. 1). *Kelley* v. *Delaware, Lackawanna & Western Railroad*, 170 Fed. (2d) 195, 196 (C. A. 1). *Isenberg* v. *Atlantic Coast Line Railroad*, 82 Fed. Sup. 927, 928 (D. C. Mass.).

[1] General Laws c. 223, § 38, "In an action against a foreign corporation . . . which has a usual place of business in the commonwealth, or, with or without such usual place of business, is engaged in or soliciting business in the commonwealth, permanently or temporarily, service may be made" in a way therein described.

In the *Thurman* case this court largely relied upon supposed limitations imposed by the Constitution of the United States, which have not been wholly borne out by the subsequent decision in *International Shoe Co.* v. *Washington,* 326 U. S. 310. The *International Shoe* case, however, was concerned not with jurisdiction to subject to a private lawsuit but with the quite different question of liability to contribute to a State unemployment compensation fund. See *Ladd* v. *Brickley,* 158 Fed. (2d) 212, 218 (C. C. A. 1). We perceive no reason why mere solicitation should be sufficient to constitute having a usual place of business under the statute relating to trustee process but insufficient under the statute providing for service upon foreign corporations. If anything, it would seem that the scope of the latter statute might be broader by reason of its express reference to soliciting business. We think that the rule should be the same under both statutes.

It is our opinion, however, that more than mere solicitation is present in the case at bar. There is in this Commonwealth a substantial office with a staff working in it, or from it as a base. In addition to straight solicitation, the activities embrace promotional work and the investigation of complaints. Promotion lays the foundation for future business transactions, which may occur with or without solicitation. The investigation of complaints is an important factor in the completion of business transactions, an indispensable aid to performance and a conserver of good will. Investigation and correspondence as to complaints partake of activity outside the simple solicitation of business. *Reynolds* v. *Missouri, Kansas & Texas Railway,* 224 Mass. 379, 386. We think that it was error to sustain the pleas.

*Exceptions sustained.*