Albert P. DENIS and Denis Manufacturing Co., Inc.

v.

PERFECT PARTS, Inc.

Civ. A. No. 55–911.

United States District Court
D. Massachusetts.

May 2, 1956.

W. R. Hulbert, William W. Rymer, Jr., Fish, Richardson & Neave, Boston, Mass., for plaintiff.

Harry Price, New York City, Specially, A. W. Wunderly, Boston, Mass., of counsel, for defendant Perfect Parts, Inc.

ALDRICH, District Judge.

In this action for patent infringement defendant moves to quash the service, and moves to dismiss for improper venue. Defendant is a New York corporation dealing in auto parts and accessories. It has no employees, in the ordinary sense, in Massachusetts. It has a "sales representative" living in Greater Boston, hereinafter called salesman. Salesman solicits orders, on commission only. All orders are subject to acceptance in New York, and are filled from there. Salesman represents other companies in addition to defendant, and represents defendant in several other states, but his Massachusetts activities for defendant are regular and substantial. In addition to soliciting orders, he receives complaints, and renders some assistance in adjusting them. On occasion he carries samples of small parts and demonstrates them in connection with soliciting orders. He leaves catalogues and promotional material. From new customers he obtains credit information and forwards it to the defendant. Each month defendant furnishes salesman with a list of his customers who are delinquent. He makes some effort to collect these accounts, and not infrequently receives checks, which he forwards to New York. The fact that he is not obliged to do this, and does it only because all orders are subject to New York approval and further orders will not be accepted from persons on the delinquent list until past due accounts have been paid, does not alter the fact that he is, in part, engaged in collections for defendant's benefit.

■ Even if mere solicitation of business is not enough (but cf. Lone Star Package Car Co. v. Baltimore & O. R. Co., 5 Cir., 212 F.2d 147), and "something more" is required, I find and rule that such existed, and that defendant at the time of service was doing business in Massachusetts and subject to process. International Harvester Co. v. Com. of Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479; Nichols v. Cowles Magazines, Inc., D.C.D.Mass., 103 F.Supp. 864; Id., D.C., 108 F.Supp. 883; Formmaster Corp. v. G. H. Bishop Co., D.C. S.D.N.Y., 138 F.Supp. 115; Wyshak v. Anaconda Copper Mining Co., 328 Mass. 219, 103 N.E.2d 230; Jet Manufacturing Co. v. Sanford Ink Co., 330 Mass. 173, 112 N.E.2d 252. The motion to quash the service must be denied.

A more difficult problem relates to venue. 28 U.S.C. § 1400(b) provides as follows:

§ 1400(b). "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."

■ As stated before, defendant is a New York corporation. I find that it does not come within the second clause of this section. Although salesman has his home in Massachusetts, customers do not come there. He operates principally out of his car. Defendant's name does not appear directly in connection with either his house or his car. It pays none of his rent or other expenses. So far as appears, it does not care where he lives. While one might say that if, because of salesman's activities, defendant is doing business in Massachusetts, salesman's own pied-a-terre is defendant's "regular and established place of business", a recent Massachusetts case indicates that this does not necessarily follow. Jet Manufacturing Co. v. Sanford Ink Co., 330 Mass. 173, 176, 112 N.E.2d 252. I feel that an established place of business requires something more evident and tangible than appears in this case.

■ With respect to the first clause of this section, defendant says that "resides" means an inhabitant, and that in the case of a corporation this is limited to the state of incorporation. Plaintiff says that a corporation now resides in every state in which it is doing business.[1] 28 U.S.C. § 1391(c). The question of whether § 1391(c) is to be read into § 1400(b) has vexed and divided the courts.[2] On defendant's side it is said that to interpret "resides" in the first clause as simply doing business "would result in partial if not complete emasculation" of the second, and more restrictive clause, C-O-Two Fire Equipment Co. v. Barnes, majority opinion, supra, note 2, 194 F.2d at page 413. While one may have a partial orchiectomy, "partial emasculation" is incorrect, both semantically and logically. The fact that a statute may mean less than at first appears is not to say that it is without force. The second clause has a clear purpose where defendant is an individual, or a partnership.[3] An interpretation rendering a statute meaningless is, of course, to be avoided, but I know of

1. I do not adopt the holding in Remington Rand, Inc. v. Knapp-Monarch Co., D.C.E.D.Pa., 139 F.Supp. 613, to the effect that doing business for venue purposes requires a greater showing than for jurisdiction. Cf. Riverbank Laboratories v. Hardwood Products Corp., 350 U.S. 817, 76 S.Ct. 47, reversing per curiam, Id., 7 Cir., 220 F.2d 465. Nor do I intimate that such showing, if needed, does not exist.

2. Illustrative cases are, Dalton v. Shakespeare Co., 5 Cir., 196 F.2d 469, pro; Ruth v. Eagle-Picher Co., 10 Cir., 225 F. 2d 572, contra (2–1); C-O-Two Fire Equipment Co. v. Barnes, 7 Cir., 194 F. 2d 410, contra (2–1), affirmed (4–4) sub nom. Cardox Corp. v. C-O-Two Fire Equipment Co., 344 U.S. 861, 73 S.Ct. 102, 97 L.Ed. 695, rehearing denied 344 U.S. 900, 73 S.Ct. 273, 97 L.Ed. 668.

3. See, e. g., Emerson v. National Cylinder Gas Co., D.C.D.Mass., 131 F.Supp. 299; Id., D.C., 135 F.Supp. 271.

no doctrine of general construction that requires an unexpressed exception to be read into one section merely to broaden the meaning of another. Eagle-Picher argues that § 1400 is a special act, and that a special act controls a general one.[4] I disagree as to the applicability of this principle. Whatever may be the history of its precursors, as presently set up § 1400(b) appears no more a special act than does any other section of the chapter. Nor is § 1391(c) a general act. It is not even a whole act. In terms it is but definitions for the remaining sections of the chapter. As pointed out by Lindley, C. J., dissenting in the C-O-Two case, supra, note 2, the Eagle-Picher rule re-writes § 1391(c) to say in effect, "for the purpose of every section of this chapter except § 1400(b), 'resides' in the case of corporations means doing business."

 For such interpolation of an unexpressed limitation there should be some clearly compelling warrant. The majority opinion in Eagle-Picher states that if warrant is not found on the basis of special versus general acts, it is found in the Reviser's Notes. Assuming, without deciding, that the statute is sufficiently ambiguous to permit such recourse, still it is not appropriate unless the Reviser's Notes are clear and unambiguous, or at least more clear and less ambiguous than the statute itself. With all deference, I do not find this to be the situation. It is true that the Reviser's Notes to § 1400(b) point out that this section is taken from § 109 of Title 28 U.S.C., 1940 ed., where instead of resident the word used was inhabitant, and state that as respects venue the two words are synonymous. It is true, also,

that inhabitant as respects corporations was limited in § 109 to the state of incorporation. But so, too, it was then so limited with respect to all other actions. See Suttle v. Reich Bros. Construction Co., 333 U.S. 163, 166, 68 S.Ct. 587, 92 L.Ed. 614, rehearing denied 333 U.S. 878, 68 S.Ct. 900, 92 L.Ed. 1153. Section 1391(c) has now expressly changed that.[5] It is to be observed that the Reviser's Notes to § 1400 specifically refer to the note to § 1391. It scarcely seems that the Reviser was then forgetful of the fact that § 1391(c) broadened generally the meaning of resident in the case of corporations. In sum, I do not find in the Notes any clear or compelling ground to read into § 1400(b) an exception to the supplied definitions.

Finally, defendant argues that § 109 established a special policy for patent suits, and that this policy should be continued. The difficulty with this argument is that § 109 established a policy of wider venue for patent suits than for other causes of action. If the exact interpretation of § 109 is to be preserved in the face of the broadening of all other venue provisions with respect to corporations, it would mean that now, instead of being uniquely broad, venue in patent suits is uniquely narrow. Which "policy" is to be continued—the previous exact meaning of § 109, or that of liberal venue provisions for patent suits?

 Under all of the circumstances I cast my lot with those judges who find no reason to read the chapter other than as a whole and on its face without modification or interpretation.[6] Defendant's motions to quash and to dismiss are denied.

4. Ruth v. Eagle-Picher Co., supra, note 2; see also Clayton v. Swift & Co., D.C. E.D.Va., 132 F.Supp. 154.

5. This admitted and obvious change would seem to rebut the presumption of no change through codification referred to in Eagle-Picher. In the face of that change I find certain statements by Messrs. Bar-

ron and Moore quoted in the majority opinion to the effect that the revision makes no alterations in existing law hard to understand.

6. Before the publication of this opinion the Second Circuit adopted the same view. Transmirra Products Corp. v. Fourco Glass Co., 2 Cir., 233 F.2d 885.