WALTHAM PRECISION INSTRUMENT COMPANY, Inc., Plaintiff, Appellant,

v.

McDONNELL AIRCRAFT CORPORATION, Defendant, Appellee.

No. 6010.

United States Court of Appeals First Circuit.

Nov. 13, 1962.

As Amended on Denial of Rehearing Dec. 5, 1962.

---

5. Rule 25(a) (1), F.R.C.P. provides that such substitution may be made within two years after the death of one of the parties.

David A. Rakov, Boston, Mass., with whom Sumner Z. Kaplan and Kaplan & Kaplan, Boston, Mass., were on brief, for appellant.

James C. Heigham, Boston, Mass., with whom Choate, Hall & Stewart, Boston, Mass., was on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal by plaintiff-appellant from a judgment of the United States District Court for the District of Massachusetts granting defendant-appellee's motion to dismiss in an action growing out of an alleged breach of contract by defendant and from an order denying plaintiff's motion under Rules 52 and 59. The basis of defendant's motion to dismiss is that it is not subject to service of process in the District of Massachusetts and that it has not been properly served.

The defendant, McDonnell Aircraft Corporation, (M.A.C.), is incorporated under the laws of Maryland and has its principal office and place of business in St. Louis, Missouri. M.A.C. is primarily a defense contractor with over 99% of its sales to the United States Govern-

ment. It manufactures military aircraft, space vehicles and electronic equipment for the space and defense industry. So far as its contacts with Massachusetts are concerned, none of these sales were made or solicited in that state. Moreover, M.A.C. has never been authorized to do business in Massachusetts and, as a foreign corporation, has never registered with the Massachusetts Commissioner of Corporations and Taxation. M.A.C. neither maintains an office, warehouse or other facility in Massachusetts nor does it have a telephone listing or bank account in that state.

Presently M.A.C. has one employee located in Massachusetts. He is a field service representative assigned to a fighter interceptor squadron at Otis Air Force Base. The squadron flies aircraft manufactured by defendant and this employee acts as liaison between the squadron and M.A.C. in St. Louis on such matters as maintenance of the aircraft and pilot orientation in the operation of the aircraft. Desk space is furnished by the Air Force.

Defendant operates a data processing automation center in Missouri which produces less than one per cent of its annual sales. In the past this center has done some work for a Massachusetts corporation under contracts made in Missouri, all of the work being performed outside Massachusetts.[1]

The instant action arises out of a contract which defendant executed with plaintiff under which the latter was to manufacture a timing device for use on a manned space capsule, as part of the Mercury Space Program. M.A.C. is the prime contractor for Project Mercury and had solicited bids from plaintiff and several other companies for manufacture of the timing mechanism.[2]

Plaintiff received the contract on the basis of its bid and thereafter commenced work. Subsequently defendant terminated the contract and thereafter plaintiff initiated the present suit.

Service was made on the Massachusetts Commissioner of Corporations and Taxation under the provisions of Mass. G.L. Ch. 181, § 3A, which provides for substituted service on a foreign corporation which "does business" in the Commonwealth.[3] Defendant moved to dismiss the complaint or in lieu thereof to quash the return of service.

The principal issue is whether the defendant has so impressed itself on the Massachusetts economy that it can be said to be doing business there within the language of the above cited statute.

As we have previously pointed out, there are two questions to be resolved in this class of case. First, whether the local statute as construed by the courts of the pertinent state would subject the foreign corporation to local jurisdiction under the circumstances there present; secondly, if the forum attempted to assert jurisdiction would this action comport with the relevant clauses of the federal constitution. Sanders As-

---

1. As the district court correctly pointed out: "The presence of the representative at the air base and the data processing contracts are isolated transactions having no connection with the present action and afford no basis for jurisdiction here. Plaintiff admits that it does not seriously rely on them."

2. The record is silent on whether any of the other companies which were solicited were doing business in Massachusetts.

3. This provision reads in full:
   "Any such corporation which does business in this commonwealth without complying with the provisions of section three, including a corporation as to which the commissioner is required by section six to refuse appointment as attorney for service, shall, without affecting any penalty, liability or disability imposed by section five, be deemed and held, in relation to any cause of action or proceeding arising out of such business, to have appointed the commissioner and his successor in office to be its true and lawful attorney, and any process in any such action or proceeding against it served upon the commissioner or his successor in office shall be of the same legal force and validity as if served on such corporation."

sociates, Inc. v. Galion Iron Works & Mfg. Co., 304 F.2d 915 (1st Cir.1962); Pulson v. American Rolling Mill Co., 170 F.2d 193 (1st Cir.1948). While the latter question is to be decided in accordance with federal precedents, evaluation of the scope of the local statute is a matter of state law and on this issue we sit as if we were a state court.

Plaintiff argues at length that, under the facts of this case, there is no constitutional inhibition against bringing the defendant within the ambit of the Massachusetts statute. For this position it relies on the expanded reach of permissive state court jurisdiction marked out by International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and culminating in McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). While the trend is surely discernible, the Supreme Court has clearly indicated that in this area there still exists due process boundaries which cannot be trespassed. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed. 2d 1283 (1958). However, we may presently pretermit the question of whether an attempt here to subject the defendant to Massachusetts jurisdiction would exceed these boundaries because it is an issue which need only be resolved after it is decided that, on like facts, a Massachusetts court would assert jurisdiction.

We start with the proposition that a state is not required to assume the full reach of jurisdiction constitutionally allowable under the Fourteenth Amendment. Perkins v. Benquet Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). Plaintiff here contends that it is the intention of the Massachusetts court to expand the thrust of its jurisdiction to its full constitutional limit. Plaintiff's argument is less persuasive because it is grounded in certain dicta of Massachusetts cases, e. g., Thurman v. Chicago, M. & St. P. Ry. Co., 254 Mass. 569, 575, 151 N.E. 63, 65, 66, 46 A.L.R. 563 (1926); Gillard's Case, 244 Mass. 47, 52, 138 N.E. 384 (1923),

decided in a day when the "full" constitutional limit was conspicuously more circumscribed than it is today. Compare, Philadelphia & Reading Ry. Co. v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710 (1917); Simon v. Southern Railway, 236 U.S. 115, 35 S.Ct. 255, 59 L.Ed. 492 (1915) and Old Wayne Mut. Life Ass'n of Indianapolis, Indiana v. McDonough, 204 U.S. 8, 27 S.Ct. 236, 51 L.Ed. 345 (1907) with McGee v. International Life Ins. Co., supra.

We believe that the more meaningful approach is to determine what the Massachusetts court has done in subjecting foreign corporations to its jurisdiction rather than to what it said, in an earlier day, it might do.

The history of Massachusetts' assertion of jurisdiction over foreign corporations has been a conservative one. Supposed constitutional inhibitions early caused the Massachusetts court to abstain from asserting jurisdiction over foreign corporations engaged in interstate commerce—holding that mere solicitation of business by a foreign corporation did not constitute "doing business." Thurman v. Chicago, M. & St. P. Ry., supra. With these constitutional fears allayed, Perkins v. Benquet Mining Co., supra, the Massachusetts court sustained jurisdiction over foreign corporations where there was solicitation of business together with some additional business activity within the state. Jet Mfg. Co. v. Sanford Ink, 330 Mass. 173, 112 N.E.2d 252 (1953); Wyshak v. Anaconda Copper Mining Co., 328 Mass. 219, 103 N.E.2d 230 (1952).

Two judges of the United States Court for the District of Massachusetts have interpreted recent decisions of the Massachusetts court to the effect that mere solicitation of business, by itself, is sufficient to render a foreign corporation amenable to suit in Massachusetts. Radio Shack Corp. v. Lafayette Radio Electronics Corp., 182 F.Supp. 717 (D.C. Mass.1960); London's Inc. v. Mack Shirt Corp., 114 F.Supp. 883 (D.C.Mass. 1953). See also, Kenmore-Louis Thea-

tre, Inc. v. Sack, 192 F.Supp. 711 (D.C. Mass.1961).

The plaintiff argues that, accepting the foregoing interpretation of the Massachusetts cases—that "mere" solicitation of business is an adequate basis for jurisdiction in Massachusetts—then a like reasoning would require that the instant defendant who solicited business (via the requesting of bids) from plaintiff would also be subject to Massachusetts jurisdiction.

The court below disposed of this contention thusly:

"However, while the Massachusetts cases have not described in detail what is meant by solicitation, in every case where solicitation has been considered as a factor in doing business, it consisted in an effort of the foreign corporation to obtain customers for its goods and services. No case has been found where the Massachusetts court has indicated that a purchase made in Massachusetts or efforts looking toward a single purchase transaction by a foreign corporation have been held to constitute doing business. Where the question has arisen it has generally been held that purchasing by a foreign corporation, even though regularly carried on within a state, as incidental to its principal business outside the state, does not constitute doing business. * * * "

On appeal, plaintiff denies that a valid distinction can be drawn between buying and selling in ascribing a sufficient "solicitation" for jurisdictional purposes. Even were we to agree with plaintiff's position as an abstract proposition, we would still affirm the district court on the present record. As we read the Massachusetts cases, even those construed to hold "mere" solicitation sufficient for jurisdiction, see Remington Arms Co. v. Lechmere Tire & Sales Co., 339 Mass. 131, 158 N.E.2d 134 (1959), the foreign corporations were engaged in a regular, continuous and systematic course of business activity. The "solicitation" was not an *ad hoc* adventure but a sustaining endeavor with a significant degree of permanency and continuity. Typically, as in Remington Arms Co. v. Lechmere Tire & Sales Co., supra, the "solicitation" is backed up with a local office and staff.[4] These factors assuredly go towards providing the "minimum contacts" with the forum that are required to guard against offending "traditional notions of fair play and substantial justice" under International Shoe Co. v. State of Washington, supra.

However, in the present case from all that appears from the record, defendant's purchase from the plaintiff is a "one-shot" transaction. This is not a situation where a foreign corporation establishes a permanent purchasing office in a state or even, absent such an office, the record indicates a regular and systematic course of purchasing within the state. Neither is it a case where the pattern of buying by defendant is but one item in a complex of activities whose sum total are held to constitute doing business. Hub Mail Advertising Service, Inc. v. Inter City Sales, 340 Mass. 8, 162 N.E.2d 760 (1959).

We do not hold that in such a case as here a Massachusetts court could not constitutionally bring the foreign corporation within its statute. We simply hold that on a careful reading of all the cases, no Massachusetts court has gone as far—or nearly as far—as would be necessary for us to sustain jurisdiction. Consequently, we are unwilling to expand the ambit of Massachusetts jurisdiction beyond the boundaries now marked out.

A subsidiary point raised by this record is whether the district court abused its discretion in refusing to amend its judgment and finding to include plaintiff's affidavit (containing no "newly disclosed" evidence) submitted nine days after the district judge had

4. However, the physical presence of an office within the Commonwealth is not a pre- requisite to jurisdiction. Jet Mfg. Co. v. Sanford Ink, supra.

filed his memorandum of decision and ordered judgment entered. We believe that the judge's action was entirely proper. George P. Converse & Co. v. Polaroid Corporation, 242 F.2d 116 (1st Cir.1957).

Judgment will be entered affirming the judgment of the district court.