Adolph CASO, Plaintiff, Appellant,

v.

**LAFAYETTE RADIO ELECTRONICS CORPORATION, Defendant, Appellee.**

No. 6723.

United States Court of Appeals First Circuit.

Dec. 27, 1966.

Irving Marmer, Boston, Mass., for appellant.

Donald J. Wood, Boston, Mass., with whom Haussermann, Davison & Shattuck, Boston, Mass., was on the brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

This is an appeal from an order of the United States District Court for the District of Massachusetts granting the defendant's motion to dismiss for lack of jurisdiction. The question presented is whether the court erred in ruling that the defendant corporation was not "doing business" in Massachusetts sufficiently to confer personal jurisdiction to dispose of a cause of action arising elsewhere and being wholly unrelated to defendant's activities in Massachusetts.

The plaintiff, a citizen of Massachusetts, alleged in his complaint that the defendant, a New York corporation having its principal place of business at Syosset, Long Island, New York, had broken a contract under which the plaintiff was to operate a "Lafayette Radio Electronics Associate Store" in Vicenza, Italy, and was to be the defendant's exclusive Italian selling agent. He also alleged deceit by the defendant in various representations that induced him to undertake the Italian agency. Federal jurisdiction is founded solely on diversity of citizenship. The complaint and summons were served on one Joseph Dansereau, manager of the "Lafayette Radio" retail store in Boston, Massachusetts. Dansereau was the principal witness at the hearing on the motion to dismiss, and his testimony was substantially uncontradicted.

The district court found the following facts: The defendant, Lafayette Radio Electronics Corporation, is engaged in selling at wholesale and retail electronic equipment and parts, and various related items. Its general offices and mail order department are located in Syosset, and it owns directly several retail stores in New York City. It has, at least in its own name, no place of business in Massachusetts; it employs no residents of Massachusetts; and it has no property, tangible or intangible, located in Massachusetts. The retail store of which Dansereau is manager is owned by Lafayette Radio Corporation of Massachusetts, a Massachusetts corporation wholly owned by the defendant and sharing the defendant's directors and officers (except for the statutory clerk required to be a resident of Massachusetts). Dansereau supervises the selling and purchasing policies of the Boston store, deposits its receipts in the corporation's account with a Boston bank, and approves bills before transmitting them to the corporation's general offices for payment. The checks, as well as the corporation's other books and accounts, are kept at its offices in New York and New Jersey, and all disbursements (including the salaries of Dansereau and the other employees) are made from there by checks drawn on the Boston account. Dansereau testified that he did not know who was in charge of advertising for the Boston store, but assumed that it was handled by the other officers of the corporation.

Lafayette of Massachusetts is engaged in the retail sale of the same sorts of electronic products sold by the defendant, including some bearing the Lafayette "house brand". It purchases its inventory partly from the defendant, partly from other suppliers, and pays the defendant on the same basis as the others. It maintains a repair department, and Dansereau testified that he would normally undertake to repair or replace equipment bearing the Lafayette name, wherever purchased, but that he would not feel obliged to do so except

"for customer's service and good will". The Boston store maintains a stock of the defendant's mail-order catalogue for consultation in the store and distribution over the counter to customers. The catalogue contains an order form bearing the defendant's New York address. Lafayette of Massachusetts does not fill mail orders, and it forwards any it may receive to the defendant's mail-order center in New York. Dansereau receives no commission or credit for any merchandise sold by mail.[1]

On these facts the district court concluded that the retail business of Lafayette of Massachusetts was not controlled by the defendant, and that Lafayette of Massachusetts was not the defendant's agent in fact, so that the defendant was not "doing business" in Massachusetts for the purposes of personal jurisdiction. It also found that in distributing the catalogues Lafayette of Massachusetts was the defendant's agent for the solicitation of business in Massachusetts, but it ruled that under state law "mere solicitation" would not support jurisdiction unless the cause of action arose from the solicitation.

## I

■ We agree with the district court. We have consistently held that wherever federal jurisdiction is sought to be conferred by service in the manner prescribed by state law, see Fed.R.Civ.P. 4(d) (7), the federal court must look first to state law to decide whether the attempt has been effective. Pulson v. American Rolling Mill Co., 1 Cir., 1948, 170 F.2d 193. See also Waltham Preci-

sion Inst. Co. v. McDonnell Aircraft Corp., 1 Cir., 1962, 310 F.2d 20; Sanders Associates, Inc. v. Galion Iron Works, 1 Cir., 1962, 304 F.2d 915.

■ We would not, however, be understood as reaffirming these precedents without being aware of recent currents in the law which challenge old assumptions. Byrd v. Blue Ridge Elec. Co-op., 1958, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed. 2d 953, and Hanna v. Plumer, 1965, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8, demonstrate that "federal" policy may compel disregard of contrary state law in a diversity case in such matters as submission of particular issues to a jury and rules governing service of process. And there has been the penetrating dialogue in the Second Circuit on the priority of a state as opposed to a federal rule regarding subjection of a foreign corporation to personal jurisdiction within a district. See Arrowsmith v. United Press International, 2 Cir., 1963, 320 F.2d 219, 6 A.L.R.3d 1072; Jaftex Corp. v. Randolph Mills, Inc., 2 Cir., 1960, 282 F.2d 508.

■■ Without pretending to enlarge upon the extensive discussion in *Arrowsmith*, we think it appropriate to reiterate that we see no compelling federal consideration to support a departure from the approach of *Pulson* in cases like the present one, whether we canvass rules, statutes, or less concretely embodied policies. We read rule 4(d) (7) [2] as applying only to the "manner" of service and as shedding no light on the question whether a defendant is subject to service in any manner. Section 1391

---

1. The plaintiff points out that these basic facts are essentially the same as those before the court in Radio Shack Corp. v. Lafayette Radio Electronics Corp., D.Mass., 1960, 182 F.Supp. 717, where the same defendant was held to be doing business in Massachusetts. Apart from the crucial fact—which effectively disposes of any res judicata argument— that the present plaintiff was not a party to that case, we note the additional distinction that in *Radio Shack* the cause of action rose out of the activities of Lafayette in Massachusetts, while here it

does not. This, as we shall explain, is a vital difference.

2. Fed.R.Civ.P. 4(d):
"  *  *  *  * Service shall be made as follows:
"(7) Upon  *  *  * [a foreign corporation], it is also sufficient if the summons and complaint are served in the manner prescribed by  *  *  * the law of the state in which the district court is held for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state."

of the Judicial Code[3] seems to us to present the twin difficulties of being historically directed to the question of venue rather than jurisdiction and affording no guidance to the decision of what constitutes "doing business". Finally, we observe that the historic primary function of the diversity jurisdiction—to provide a "neutral" forum for the out-of-state litigant who fears that the state court may be unduly, if unconsciously and inarticulately, solicitous for the interests of its own citizens—hardly supports a liberal rule of jurisdiction where, as here, the plaintiff is a citizen of the forum state seeking to enforce a substantive right arising solely from state law. In short, where it appears, as we think it does here, that the state court would not take jurisdiction over the foreign defendant, we would not be justified in finding jurisdiction in the district court either by application of a "federal" rule of jurisdiction or by a creative attitude as to what the state law may be developing to be.

## II

■ There is no question that Massachusetts could, if it chose, exercise jurisdiction here. Though the defendant's activities in a state are minimal, it does not violate due process to exercise jurisdiction so long as the activities show sufficient "contact" with the state so that it is reasonable to require the defendant to answer a suit there. International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; McGee v. International Life Ins. Co., 1957, 355 U.S. 220, 78 S.Ct.

199, 2 L.Ed.2d 223. Here it can be inferred that the defendant obtains a substantial volume of sales through the twin conduits of the Boston store and the mail order catalogues distributed by it. With respect to transactions arising from the activities of Lafayette of Massachusetts it seems clear that the defendant has enough impact on the commerce of Massachusetts to warrant the extension of jurisdiction. Nevertheless, as we have noted before, the question is whether Massachusetts would exercise jurisdiction wherever it could, and the Supreme Judicial Court has generally been conservative in this respect. Waltham Precision Inst. Co. v. McDonnell Aircraft Corp., supra, 310 F.2d at 23.

In Thurman v. Chicago, M. & St. P. Ry., 1926, 254 Mass. 569, 151 N.E. 63, 46 A.L.R. 563, as here, the plaintiff attempted service under Mass.G.L. c. 223, § 38.[4] There it was held that despite the express reference to "solicitation", the statute would not be interpreted as conferring jurisdiction where the defendant's only contact with Massachusetts was an "agent" whose sole function was to solicit passenger and freight traffic for the defendant railroad's interstate business and the cause of action did not arise out of his activities, because such a broad interpretation would violate constitutional restrictions on the state's jurisdiction. The court specifically left open the question whether solicitation would be a sufficient basis when the cause of action grew out of the business solicited, holding only that something more than solicitation was necessary when the cause was transitory.

---

**3.** 28 U.S.C. § 1391. Venue generally:
"(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

**4.** Mass.G.L. c. 223:
"Section 37 * * *.
"In an action against a domestic corporation * * *, service shall be made upon the president, treasurer, clerk, cashier, secretary, agent or other officer

in charge of its business, or, if no such officer is found within the county, upon any member of the corporation. * * *"
"Section 38. In an action against a foreign corporation, except an insurance company, which has a usual place of business in the commonwealth, or, with or without such usual place of business, is engaged in or soliciting business in the commonwealth, permanently or temporarily, service may be made in accordance with the provisions of the preceding section relative to service on domestic corporations in general * * *."

In two later cases the Supreme Judicial Court has questioned the constitutional fears upon which *Thurman* was grounded, and has suggested a broader definition of "doing business" in the context of a local cause. But it has not said anything to vitiate *Thurman's* suggestion that the statute should be read as imposing different standards according to whether the plaintiff's cause is local or transitory.

In Wyshak v. Anaconda Copper Mining Co., 1952, 328 Mass. 219, 103 N.E.2d 230, the foreign corporation was a debtor of the defendant, joined by trustee process under Mass.G.L. c. 246, § 1. Service had been made on the corporation's district sales manager in Cambridge, whose function was to solicit orders and to promote the corporation's interstate business. The court held that the term "usual place of business" in the trustee statute should be interpreted as it would be in Mass.G.L. c. 223, § 38, and implied that under the latter statute "mere solicitation" might be enough to confer jurisdiction, after *International Shoe*. But it avoided a direct decision by holding that the district manager's promotional work and investigation of complaints in Massachusetts amounted to more than mere solicitation. In Jet Mfg. Co. v. Sanford Ink Co., 1953, 330 Mass. 173, 112 N.E. 2d 252, *Wyshak* was expressly read as undercutting the constitutional basis of *Thurman*. But again the court rested its decision on an alternative ground. In *Jet,* as in *Wyshak,* service was made on a resident sales manager whose job was to solicit business, to promote goodwill, and to investigate (but not to settle) complaints. Therefore, the court held that the case involved more than solicitation. Moreover, it specifically assumed that the cause of action arose out of the business solicited in Massachusetts.

Even more recently, in Remington Arms Co. v. Lechmere Tire & Sales Co., 1959, 339 Mass. 131, 158 N.E.2d 134, the court demonstrated reluctance to reinterpret a related statute in the light of *Wyshak*. In that case the foreign corporation was the plaintiff, and the defendant claimed that it was barred from suing because it was doing business in Massachusetts and had not complied with the registration provisions of Mass. G.L. c. 181.[5] As in *Jet* and *Wyshak,* the corporation's sole representative in Massachusetts was a sales manager who solicited orders. The court held that the activities in evidence amounted to no more than interstate commerce and that it would not change its earlier interpretation excluding interstate commerce from the scope of chapter 181, even though that interpretation may have been prompted by constitutional fears similar to those expressed in *Thurman* and discounted in *Wyshak* and *Jet*. We perceive no reason why the court would not be similarly reluctant to reexamine *Thurman's* interpretation of section 38.

From these cases we derive two propositions about the Supreme Judicial Court's treatment of jurisdiction over foreign corporations: (a) despite the language of Mass.G.L. c. 223, § 38, and despite the court's intimations to the contrary, it has never extended jurisdiction over a corporation whose activities in the state amounted to no more than the constitutionally permissible "minimum contact"—it has regularly found more than "mere solicitation"; (b) even when it has found solicitation plus some other activity, it has not extended jurisdiction when the cause of action did not arise out of the activities

5. A foreign corporation doing business or having a usual place of business in Massachusetts is required to file a copy of its charter and a certificate setting forth certain basic information about its structure and officers, Mass.G.L. c. 181, § 5, and to appoint the state secretary its agent for service of process, Mass.G.L. c. 181, § 3. Failure to comply with section 5 renders the corporate officers liable to a fine and bars the corporation from suing in the Massachusetts courts. Mass. G.L. c. 181, § 5. Failure to comply with section 3 makes the state secretary constructive agent for service as to causes of action arising out of the corporation's business in the state. Mass.G.L. c. 181 § 3A.

in Massachusetts. On the other hand, where the corporation's activities more closely approximated the regular conduct of a domestic corporation—that is to say, where the defendant was clearly "doing business" in Massachusetts—the court has allowed jurisdiction for a transitory cause of action. Trojan Eng'r Corp. v. Green Mountain Power Corp., 1936, 293 Mass. 377, 200 N.E. 117.[6]

■ We are satisfied that, generally speaking, the Massachusetts courts would assert jurisdiction over a foreign corporation served under section 38: (a) whenever the corporation's activities affect the commerce of Massachusetts substantially so that the state has an interest in regulating the general conduct of those activities ("doing business"), or (b) whenever the corporation's activities in Massachusetts have so affected the particular transaction at issue that it is appropriate to hear the claim in a Massachusetts court. We are not satisfied that jurisdiction would obtain in the absence of both these conditions.

### III

■ The question remains whether the activities of the defendant here satisfy either of the conditions. From one point of view, it may be said that the defendant was surely doing business in Massachusetts. That is, through the conduit of the Boston store the defendant surely sells a substantial quantity of its merchandise each year to residents of Massachusetts. This involves not a few isolated transactions, but rather a regular and continuing flow of commerce. The trial court found that Lafayette of Massachusetts dealt with the defendant on the same terms as with other suppliers, and that it pursued an independent purchasing policy. But in view of the ownership and control of Lafayette of Massachusetts, as well as its inclusion in the corporate "image", it

would be unreasonable to infer that the Boston store would ever carry less than a substantial amount of merchandise purchased from the defendant. In this respect Lafayette of Massachusetts might seem indistinguishable from a directly-owned branch store staffed with employees of the defendant. Nevertheless, the separate corporate identity, though formal, is real. Cannon Mfg. Co. v. Cudahy Packing Co., 1925, 267 U.S. 333, 455 S.Ct. 250, 69 L.Ed. 634; Aro Mfg. Co. v. Automobile Body Research Corp., 1 Cir., 1965, 352 F.2d 400, cert. denied, 383 U.S. 947, 86 S.Ct. 1199, 16 L. Ed.2d 210. There is no evidence that Lafayette of Massachusetts is controlled by the defendant in its dealings with other suppliers, or that it tends to deal with the defendant except when it is profitable for it to do so. Of course, the defendant is the sole source of the "house brand" products. But as to this the situation seems no different from that of a foreign manufacturer selling his product to a domestic distributor under a long-term contract. Cf. Woodlawn Realty Corp. v. Smith-Scott Co., D.Mass., 1964, 226 F.Supp. 704; Darling v. P. J. Ritter Co., 1956, 11 Mass.App.Dec. 132. The impact on the economy of Massachusetts is the same in either case; and in either case the existence of the domestic corporation, clearly subject to suit in Massachusetts, would lessen the state's interest in regulation of the foreign corporation. Those cases we have found which assert jurisdiction despite a formal independence have involved more evidence of control by the foreign defendant, or evidence that the domestic "agent" exerted himself solely for the benefit of the defendant. See, e. g., Supreme Wine Co. v. Distributors of New England, Inc., D.Mass., 1961, 198 F.Supp. 318; Kenmore-Louis Theatre, Inc. v. Sack, D.Mass., 1961, 192 F. Supp. 711. Here there is nothing to show that Lafayette of Massachusetts does not

6. In *Trojan* a substantial number of the defendant's officers and directors resided in Massachusetts. The president maintained a permanent office in Boston, and half the directors' meetings were held there. Most of the major policy decisions of the corporation were made by the officers in Boston, and nearly every corporate function except the actual operation of its physical assets was conducted there.

pursue entirely independent policies as to purchasing, selling, pricing, and personnel.[7] Similarly, there is nothing to show that Lafayette of Massachusetts does not act with regard solely to its own profits, and without regard to the business of the defendant. We conclude that the district court was substantially supported in its finding that defendant was not "doing business" in Massachusetts.

But it is argued that the distribution of the defendant's mail order catalogues, together with the practice of forwarding orders addressed to the Boston store and the undertaking to repair equipment under the "Lafayette Radio" warranty, amount to the sort of "solicitation plus" found to confer jurisdiction in *Wyshak* and *Jet*. We think that the circumstances are not precisely analogous, because in those cases the soliciting agent acted solely for the benefit of the defendant, while here there is some evidence that Lafayette of Massachusetts itself benefited. Dansereau testified that the catalogues were used to provide customers of the Boston store with some idea of the items stocked there. Furthermore, he testified that he would undertake to service items bearing the Lafayette brand. That action is entirely consistent with a desire to preserve his own interest in the Lafayette name, rather than any concern for the defendant's business. Nevertheless, it can be inferred that the defendant has regularly sold a substantial quantity of merchandise in Massachusetts through the catalogues distributed over the counter in Boston; and it may be that on that ground the Massachusetts courts would take jurisdiction as to a claim arising from such a catalogue sale. But we are not satisfied that this activity, whether it be "mere solicitation" or "solicitation plus", would be held to support jurisdiction here, where the cause of action arises from a direct transaction with the defendant and the only contact with Massachusetts is that the plaintiff is resident there. Cf. Boston Packaging Mach. Co. v. Woodman Co., D.Mass., 1954, 125 F. Supp. 567. To be sure, the more recent Massachusetts cases might be read as evidence of a liberal attitude toward jurisdiction; but since we find no clear repudiation of *Thurman's* holding that more substantial contacts with the state are required when the cause is transitory, and since, as we have explained above, we see no strong federal interest in taking jurisdiction here where it is not clear that the state would, we are content to await some more explicit declaration of the state's policy.

Affirmed.

---

**7.** Although the testimony on responsibility for advertising is vague, it clearly does *not* establish anything more than that the officers of Lafayette of Massachusetts placed advertising in Boston papers in order to promote the retail business of the Boston store.