**EATABLE GREETABLE PRODUCTS, INC., et al., Plaintiffs,**

v.

**SWEET STOP INC., et al., Defendants.**

**Civ. A. No. 85–3472–C.**

United States District Court, D. Massachusetts.

Feb. 13, 1986.

John L. Welch, Wolf, Greenfield & Sacks, Boston, Mass., for plaintiffs.

## MEMORANDUM

CAFFREY, Chief Judge.

This is a civil action brought by Eatable Greetable Products, Inc., a Massachusetts corporation having its principal place of business at Sharon, Massachusetts, and David Aronson, president of Eatable Greetable Products and a citizen of Massachusetts, against Sweet Stop, Inc., a New York corporation having its principal place of business at Staten Island, New York, and Gerald Feldman, president of Sweet Stop and a New York citizen. The plaintiffs seek both equitable relief and damages on the ground that the defendants, *inter alia,* violated an agreement with the plaintiffs whereby the defendants assigned to David Aronson the exclusive right to manufacture, have manufactured, sell or otherwise distribute the defendants' product, the "candy greeting card jar".

The issues now before the Court are whether the Court has in personam jurisdiction over Sweet Stop and Feldman and, if so, whether the plaintiffs are entitled to a preliminary injunction against Sweet Stop and Feldman. For the reasons set forth below, I rule that the plaintiffs have carried their burden of showing that this Court has jurisdiction over the defendants, and that the plaintiffs are entitled to a preliminary injunction.

The pleadings, affidavits, and depositions [1] filed in this case reveal the following

---

1. The defendants have not filed any papers or made any appearances in this case. The plain-   tiffs' counsel informed the Court on October 28,

facts: In May of 1982 the defendants, Sweet Stop and Feldman, entered into their first agreement with David Aronson. By the terms of this agreement Aronson acquired the exclusive right to manufacture, distribute, and sell the "candy greeting card jar" in all of New England, except for Fairfield County, Connecticut. Defendant Feldman came to Massachusetts to sign the agreement and spent several days working with Aronson in Massachusetts. Aronson paid Sweet Stop and Feldman more than $15,000 under the 1982 agreement. Aronson made approximately 50% of his sales of the candy jar product in Massachusetts.

On November 23, 1984 the defendants and Aronson entered into a second agreement, which they intended to supersede the 1982 agreement. That 1984 agreement is the subject of this action. By the terms of the 1984 agreement, Aronson agreed to pay the defendants $15,000 in installments in exchange for the right to manufacture, distribute, and sell the candy jar product in New England, exclusive of Fairfield County, Connecticut, for a 99 year period. The agreement provided that the conveyance of rights to Aronson was "irrevocable" and that the defendants agreed not to seek "... to revoke said conveyance and assignment, or otherwise to re-capture the New England territory ..." from Aronson during the 99-year period. Aronson gave the defendants a downpayment of $2,000 in November of 1984 and then made monthly payments of $599.89 through August of 1985, when the defendants purported to terminate the agreement.

Plaintiff Aronson states in his affidavit that he has performed all his duties set forth in the 1984 agreement. On August 15, 1985 the defendants' counsel sent a letter purporting to terminate the 1984 agreement because Aronson, who previously had operated his business as a sole proprietorship under the name "Eatable Greetables", incorporated under the name "Eatable Greetable Products, Inc." after signing the agreement. In this letter the defend-

ants' counsel stated that the defendants' right to terminate the agreement was based on paragraph 18 of the agreement which provides that "the rights, duties and obligations of each party ... may not be divided, assigned or transferred by [Aronson] to another without the prior express, written consent of [Sweet Stop and Feldman]...."

After mailing this letter, the defendants instructed their New England sales representative, Joseph C. Sullivan of Dover, Massachusetts, to begin selling the candy jar product in New England.[2] On August 28, 1985 the defendants forwarded 96 "candy greeting card jars", catalogue sheets, and a price list for the jars to Sullivan in Massachusetts. The price list indicated that it was "effective in New England only". During the first week in September of 1985, Sullivan and his staff contacted and took orders from at least five customers in Massachusetts. The orders were then forwarded to the defendants in New York. In addition to taking orders from customers in Massachusetts, Sullivan told at least some of those customers that, according to Sweet Stop and Feldman, Aronson had breached the 1984 agreement, lost his right to sell the candy jar product, and that the defendants would obtain a cease and desist order to prevent Aronson from selling the product.

On September 6, 1985, immediately after the plaintiffs learned of the events described above, they brought this action seeking a declaratory judgment that they did not breach their 1984 agreement with the defendants, and also seeking damages and injunctive relief based on alleged acts of trade disparagement, unfair competition, and breach of contract by the defendants. On September 12, 1985 the plaintiffs filed an ex parte motion for a temporary restraining order. On September 19, 1985 Magistrate Robert B. Collings recommended that a temporary restraining order be issued, and on October 10, 1985 this

1985 that the defendants believe that the Court does not have personal jurisdiction over them.

**2.** Sullivan had sold other candy products for the defendants in New England since June of 1985.

Court issued the requested restraining order and ordered the defendants to show cause why the restraining order should not be converted to a preliminary injunction. The defendants failed to appear at the show cause hearing on October 28, 1985, and at that time the Court requested the plaintiffs to submit a brief on the question of the Court's in personam jurisdiction over Sweet Stop and Feldman.

This Court may exercise jurisdiction over the defendants only if both of the following questions are answered affirmatively: 1) Is the assertion of jurisdiction authorized by the Massachusetts long-arm statute, Mass.Gen.Laws Ann. ch. 223A, § 3? and 2) Is the exercise of jurisdiction consistent with the basic due process requirements of the United States Constitution? *Good Hope Industries, Inc. v. Ryder Scott Co.,* 378 Mass. 1, 389 N.E.2d 76 (1979); *Hahn v. Vermont Law School,* 698 F.2d 48 (1st Cir.1983). The plaintiffs bear the burden of demonstrating that the Court has personal jurisdiction over the defendants. *Palandjian v. Pahlavi,* 586 F.Supp. 671 (D.Mass.1984).

The law of the forum state, in this case Massachusetts, is controlling with respect to the amenability to suit of a nonresident in a diversity action. *Hahn,* 698 F.2d at 49; *Caso v. Lafayette Radio Electronics Corp.,* 370 F.2d 707 (1st Cir.1966). The relevant portion of the Massachusetts long-arm statute provides that "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action in law or equity arising from the person's ... transacting any business in this commonwealth...." Mass. Gen.Laws Ann. ch. 223A, § 3. This language has been construed to impose a set of constraints on the exercise of in personam jurisdiction in addition to those imposed by the United States Constitution. *Nova Biomedical Corp. v. Moller,* 629 F.2d 190 (1st Cir.1980).

The Supreme Judicial Court of Massachusetts has said that the term "transacting any business" is not limited to commercial activity, but rather "is general and applies to any purposeful acts by an individual, whether personal, private or commercial." *Ross v. Ross,* 371 Mass. 439, 441, 358 N.E.2d 437 (1976). The scope of the term "transacting any business" within the meaning of the long-arm statute "must be decided on the particular facts" involved in each case. *Droukas v. Divers Training Academy, Inc.,* 375 Mass. 149, 157, 376 N.E.2d 548 (1978).

For the reasons discussed below, I rule that this action "arises from" the defendants' "transacting any business" in Massachusetts within the meaning of Mass. Gen.Laws Ann. ch. 223A, § 3. The facts in this case are similar to those in *Nova Biomedical Corp. v. Moller,* 629 F.2d 190 (1st Cir.1980), a case in which the Court of Appeals for the First Circuit reversed the district court's dismissal of the action for lack of personal jurisdiction over the defendant, a Swiss citizen. The defendant's principal contacts with Massachusetts consisted of a cross-licensing agreement with a Massachusetts corporation and the sale of various products and chemicals to that corporation. The Swiss defendant wrote two letters to the plaintiff, another Massachusetts corporation, charging it with patent infringement and threatening suit. After receiving these letters, the plaintiff sought a declaratory judgment that a patent held by the defendant was invalid. The Court of Appeals ruled that on those facts the defendant's actions constituted the transaction of business within the meaning of the Massachusetts long-arm statute because the defendant's sending threatening letters was an attempt "to reduce competition and thereby improve defendant's marketing and economic position." *Nova,* 629 F.2d at 195, quoting from *B & J Manuf. Co. v. Solar Indus., Inc.,* 483 F.2d 594, 598 (8th Cir.1973). *See also Hahn v. Vermont Law School,* 698 F.2d 48 (1st Cir.1983) (mailing application information and acceptance letter to applicant in Massachusetts is sufficient, without more, to constitute transacting business under the Massachusetts long-arm statute).

The facts in this case, even more forcefully than in the *Nova Biochemical* case, support the conclusion that this case arises from the defendants' "transacting any business" in Massachusetts. The record reveals that in 1982 the defendants sold David Aronson the rights to manufacture, distribute, and sell the candy jar product in Massachusetts and the other New England states during a three year period for $15,-000. Fifty percent of Aronson's sales pursuant to this contract were made in Massachusetts. In August of 1984 the parties entered into the agreement that is the subject of this litigation. By the terms of the 1984 agreement the defendants conveyed all of their rights for the next 99 years with respect to the candy jar product to Aronson for $15,000, to be paid by Aronson in installments. In June of 1985 the defendants engaged an agent in Massachusetts, Joseph Sullivan, to sell other candy products for them in Massachusetts. Most significantly, in August of 1985 the defendants' counsel sent a letter to the plaintiffs purporting to terminate the 1984 agreement. The defendants then instructed Sullivan to start selling the candy jar product in New England and sent 96 jars, catalogue sheets, and a price list "effective in New England only" to him. During the first week of September, 1985, Sullivan and his staff took orders from at least five businesses in Massachusetts and then forwarded those orders to the defendants in New York.

Since the plaintiffs have demonstrated that the Court has jurisdiction over the defendants under the Massachusetts long-arm statute, the next inquiry the Court must make in its analysis with respect to the personal jurisdiction issue in this case is whether the exercise of jurisdiction over Sweet Stop and Feldman comports with the due process requirements of the United States Constitution. For the reasons discussed below, I rule that it does.

■ Due process requires that the defendant be given adequate notice of the suit, *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and be subject to the personal jurisdiction of the Court, *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Whether the defendants were given notice is not an issue in this case. For this Court to exercise personal jurisdiction over the defendants, their contacts with Massachusetts must be such that maintenance of the suit "does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co.*, 326 U.S. at 316, 66 S.Ct. at 58, quoting from *Milliken v. Meyer*, 311 U.S. 457, 464, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940).

The defendants' attempt to retake the New England territory, including Massachusetts, from Eatable Greetable Products and Aronson by sending a letter into Massachusetts purporting to terminate the 1984 agreement, the defendants' hiring of Joseph Sullivan to sell the candy jar product in Massachusetts, and the defendants' sending 96 jars and price lists to Sullivan in Massachusetts clearly established such contacts between Massachusetts and the defendants that this Court's exercise of jurisdiction over the defendants does not offend traditional notions of fair play and substantial justice. Moreover, I rule that having sought to recapture Massachusetts as a sales area for its candy jar product, Sweet Stop and Feldman "should reasonably [have] anticipate[d] being haled into court there." *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

The defendants' attempts to take back the right to manufacture, distribute, and sell the candy jar product in Massachusetts is supportive of this Court's exercise of personal jurisdiction over the defendants. *See Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984). *See also, McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). Just as the brunt of the harm in *Calder v. Jones*, 465 U.S. at 788–89, 104 S.Ct. at 1486–87, was suffered by the plaintiff in California, the brunt of the harm in this case was suffered by the plaintiffs in

Massachusetts. Moreover, the courts in Massachusetts have a strong interest in affording Massachusetts citizens protection from acts such as those alleged in this case. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776, 104 S.Ct. 1473, 1479, 79 L.Ed.2d 790 (1984).

The final question this case presents is whether the plaintiffs are entitled to a preliminary injunction against Sweet Stop and Feldman. To determine whether the preliminary injunction should issue, the Court must evaluate the likelihood of the plaintiffs' success on the merits, the plaintiffs' claim that they will suffer irreparable harm if the injunction is denied, and any injury the defendants will suffer if the injunction is granted. *Town of Brookline v. Goldstein*, 388 Mass. 443, 447 N.E.2d 641 (1983).

The letter of the defendants' counsel to the plaintiffs, dated August 15, 1985, stated that Aronson's act of incorporating his sole proprietorship was a transfer of Aronson's rights under the agreement, to which the defendants did not give their express written consent. The letter said further that the act of incorporation therefore was a violation of paragraph 18 of the 1984 agreement, which provided that Aronson could not "divide[ ], assign[ ] or transfer" either party's rights, duties, or obligations under the agreement without the consent of Sweet Stop and Feldman. There is absolutely no difference that could possibly affect the defendants whether Aronson operates his business as a sole proprietorship or a corporation. Aronson therefore did not need the defendants' consent before changing the form of his business. Moreover, even if I were to conclude that Aronson should have requested the defendants' consent before incorporating the business, his failure to do so clearly was not a material breach of the agreement which would entitle the defendants to terminate the agreement. Accordingly, I rule that the plaintiffs have demonstrated a likelihood of success on the merits.

The plaintiffs have also shown that they will suffer irreparable harm if injunctive relief is not issued. The affidavits of David Aronson and the deposition of Joseph Sullivan demonstrate that, at the defendants' request, Sullivan solicited Aronson's customers in Massachusetts to buy the "candy greeting card jar" and told these customers that the plaintiffs are no longer entitled to sell it. The plaintiffs' sales of the "candy greeting card jar" constitutes more than half of their business. Therefore, the plaintiffs face the loss of more than half of their customers and the ultimate demise of their business if an injunction is not issued. This is a sufficient basis for a finding of irreparable harm, especially in light of the strength of the plaintiffs' legal position.

The defendants, on the other hand, have not shown that they will suffer any hardship if an injunction is issued. In light of the likelihood that the plaintiffs will succeed on the merits, the plaintiffs' showing that they will suffer irreparable harm if the injunction is not issued, and the failure of the defendants to show that they will suffer any harm if the injunction is issued, I conclude that the balance of hardships tilts decidedly in favor of the plaintiffs. Accordingly, the plaintiffs' request for a preliminary injunction should be granted.

Order accordingly.

## PRELIMINARY INJUNCTION

In accordance with memorandum filed this date, it is ORDERED:

The defendants and their agents, servants, and employees, and all persons in active concert with any or all of them, are immediately and indefinitely enjoined from:

1. Offering the Product for sale, or selling, or otherwise distributing the Product in the New England Territory; and

2. Otherwise unfairly competing in any manner whatsoever with plaintiffs.